**In re BLIER CEDAR COMPANY, INC., Debtor.**

**Rudolph J. Blier and Emma D. Blier, Alleged Debtors.**

**Bankruptcy Nos. BK78–159ND, 179–00023, and 180–10010.
Adv. No. 80–19.**

United States Bankruptcy Court,
D. Maine.

May 14, 1981.

Bruce A. Coggeshall, Portland, Maine, for Blier Cedar.

Richard E. Poulos, Portland, Maine, trustee.

Duane D. Fitzgerald, Bath, Maine, for parent.

Gregory A. Tselikis, Charles Miller, Portland, Maine, for Emma and Rudolph Blier.

Kenneth Snitger, Portland, Maine, for Rudolph Blier.

## MEMORANDUM OPINION

CONRAD K. CYR, Bankruptcy Judge.

A subpoena duces tecum issued against Philip Parent, Esquire for the production of certain documents in connection with a scheduled examination under Bankruptcy Rule 205(a) concerning a real estate foreclosure by Louis Bornstein on property belonging to Rudolph and Emma Blier [the Bliers], husband and wife, and the trustee in bankruptcy of Blier Cedar Company [Blier Cedar], Richard E. Poulos, Esquire [trustee]. Parent represented Blier Cedar and the Bliers, but not Bornstein, in connection with the subject real estate transaction. Parent sought a protective order pending an opportunity on the part of the court to determine any claim of attorney/client privilege.[1] At the conclusion of the hearing held on the motion for a protective order, no former client having claimed the privilege,[2] the court notified all alleged former clients, as well as Bornstein,[3] of the documentary demands of the trustee. Ultimately, only the Bliers claimed the privilege. They did so by joint affidavit,[4] as clients of Parent both in

---

1. Although the privilege belongs strictly to the client, Garner v. Wolfinbarger, 430 F.2d 1093, 1096 (5th Cir. 1970). Parent was under an ethical obligation, see Schwimmer v. United States, 232 F.2d 855, 863 (8th Cir. 1956), to seek protection pending either waiver of the privilege by the client, United States v. United Shoe Machinery Corporation, 89 F.Supp. 357, 359 (D.Mass.1950), or judicial rejection of any claim of privilege, 8 Wigmore on Evidence § 2322 (McNaughton Rev. 1961), at 630.

2. It became apparent during a conference with counsel in chambers immediately prior to the hearing that at least one of the alleged former clients, Emma D. Blier, had not been notified of the hearing or of the documentary demands of the trustee, thus precluding a determination of her unclaimed privilege. See United States v. United Shoe Machinery Corp., 89 F.Supp. 357,

358 (D.Mass.1950). See also United States v. Osborn, 561 F.2d 1334, 1339 (9th Cir. 1977); Garner v. Wolfinbarger, 430 F.2d 1093, 1095–96 (5th Cir. 1970).

3. Bornstein has waived any claim of attorney/client privilege. United States v. Gurtner, 474 F.2d 297, 299 (9th Cir. 1973); Schwimmer v. United States, 232 F.2d 855, 863 (8th Cir. 1956).

4. The court required that the following information accompany any claim of privilege:

   1. The identity and relationship of the alleged former client claiming the privilege of each person interviewed by or supplying information to Parent in relation to such document, the identity and relationship of the alleged former client of each person participating in the preparation of each document;

their individual capacities and as representatives of Blier Cedar.[5] The court conducted an in camera inspection of the twenty seven subpoenaed documents because Parent's testimony and the Bliers' joint affidavit were insufficient to enable the court to determine their claims of privilege.[6]

From its inception until its incorporation in 1964, Rudolph J. Blier operated Blier Cedar as a sole proprietorship engaged in the manufacture of wood fences. After incorporation and until its adjudication as a bankrupt on October 19, 1979, the Bliers, as its officers and sole stockholders, operated the business of Blier Cedar, expanding into the production of white cedar shingles. Working capital was borrowed from Bornstein during this period, on the strength of real estate mortgages. During 1971, Emma D. Blier requested Parent to prepare an abstract of all real estate in the name of Blier Cedar, the Bliers, Emma D. Blier, and/or Rudolph J. Blier, a project finally completed in March, 1976. The abstracts revealed certain defects in title concerning which Rudolph J. Blier met with Parent in 1974. In particular, certain record encumbrances, including various Bornstein mortgages and a second mortgage of Maine Sugar Industries, Inc. [MSI], were discussed. Rudolph J. Blier requested Parent to prepare documents necessary to enable Bornstein to foreclose on a parcel of real estate in the name of Blier Cedar and on other real estate held by the Bliers as individuals. Foreclosure notices were duly recorded. There was no redemption and record title vested in Bornstein during March, 1976. Blier Cedar filed its Chapter XI petition on

August 9, 1978. On July 19, 1979, Richard E. Poulos, Esquire was appointed receiver and continued to operate the business until the adjudication in bankruptcy of Blier Cedar on October 19, 1979. Poulos later qualified as trustee in bankruptcy of Blier Cedar. Shortly thereafter, the trustee filed an involuntary chapter 7 petition against Rudolph J. Blier, followed by one against Emma D. Blier.

The trustee seeks to invalidate the real estate transfers to Bornstein by demonstrating that the Bliers permitted the foreclosures so as to expunge the MSI second mortgage, as well as to hinder, delay and defraud existing and future creditors.

■ The characterization of documents as privileged because the contents may have emanated directly or indirectly from confidential communications between clients and their attorney is not determinative of a claim of privilege. The claim of privilege is confirmed only if the client can convince the court that the subject communication satisfies each element of the privilege and does not come within an exception. *See United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977); *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973).

■ The manner in which the present claim of privilege comes before the court substantially complicates the determination as to the appropriate choice-of-law rule. A claim of attorney/client privilege arising in a discovery proceeding conducted in a bankruptcy case is governed by Federal Rule of

---

2. The identity and relationship to Parent and to the alleged former client of each person present during the communication of any information used to prepare each document;

3. The place, date and manner of preparation of each document;

4. The name of each person to whom each document or its contents have been communicated by any means, including summarization; and

5. A detailed description of the circumstances allegedly giving rise to the attorney-client relationship.

5. Whatever privilege may attach to communications by the Bliers *qua* representatives of

Blier Cedar belongs to the corporation and not to the individual officer. *United States v. Piccini*, 412 F.2d 591, 593 (2d Cir. 1969). By virtue of the adjudication of Blier Cedar as a bankrupt, on October 19, 1979, all rights and powers of the corporation now repose in its trustee in bankruptcy. Bankruptcy Act, § 70(a)(3); 11 U.S.C. § 110(a)(3). As *former* officers of the corporation, the Bliers may not claim the privilege for Blier Cedar. *In re Grand Jury Subpoena Duces Tecum*, 391 F.Supp. 1029, 1034 (S.D. N.Y.1975).

6. *See Brown v. United States*, 276 U.S. 134, 144, 48 S.Ct. 288, 290, 72 L.Ed. 500 (1928).

Evidence 501,[7] which expressly states that the principles of federal common law govern claims of privilege, except in civil actions where state substantive law supplies the rule of decision, in which case privilege is determined in accordance with state law. *In re Grand Jury Impaneled January 21, 1975*, 541 F.2d 373, 379 (3d Cir. 1976); *Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975).

The trustee sought to examine Parent pursuant to Bankruptcy Rule 205(a) concerning the acts, conduct and property of the bankrupt, Blier Cedar. Rule 205(a) examinations are nonadversarial proceedings aimed at discovering evidence upon which may be based future causes of action. As a function of the Federal Bankruptcy Act, the Rule 205(a) examination is governed by bankruptcy law rather than state substantive law. *See* Bankr.R. 726 & 917. Therefore, if the subpoena duces tecum had issued pursuant to Rule 205 alone, the federal common law rule of privilege would apply.

The present claim of privilege is raised also in connection with discovery being conducted by the trustee under Fed.R. Civ.P. 26 in the involuntary chapter 7 proceedings pending against Rudolph J. Blier[8] and against Emma D. Blier,[9] but need be considered only in connection with the Blier Cedar and Emma D. Blier proceedings.[10] Emma D. Blier is charged with "generally not paying [her] debts as [they] become due,"[11] including the debt asserted by the trustee to be due Blier Cedar by Emma D. Blier by virtue of the Bornstein transaction. The Bornstein transfer is alleged to have been fraudulent under Maine law, a matter as to which Maine substantive law is controlling. The Maine Rules of Evidence would ordinarily provide the rule of decision as to the claims of privilege raised in connection with the Emma D. Blier proceedings. *See* Fed.Rule Evid. 501.

Congress did not intend dual application of conflicting rules[12] where a federal question and a pendant state question are presented in a single action, *see Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458–59 (N.D.Cal.1978), but rather contemplated application of the rule favoring reception of the evidence. Sen.Rep.No. 93–

---

7. Bankr.R. 726 & 917; Fed.R.Civ.P. 26(b)(1). *See United States v. Landof*, 591 F.2d 36, 37 (9th Cir. 1978); *Southern Railway Co. v. Lanham*, 403 F.2d 119, 134 (5th Cir. 1968).

  Bankruptcy Rule 726 provides in part that Fed.R.Civ.P. 26 governs discovery in adversary proceedings. Fed.R.Civ.P. 26(b)(1) renders information not relevant or privileged discoverable.

8. The subpoena duces tecum is predicated upon the involuntary chapter 7 proceedings pending against Rudolph J. Blier and Emma D. Blier, but those proceedings are not similarly based. Rudolph J. Blier is charged with diverting Blier Cedar funds to personal use. No debt is alleged to be due Blier Cedar by Rudolph J. Blier in connection with the Bornstein transactions. Evidence concerning the Bornstein transaction is therefore not relevant and not discoverable in these involuntary proceedings. Fed.R.Civ.P. 26(b)(1). Therefore, the claims of privilege need only be considered in the context of the proceedings involving Blier Cedar and Emma D. Blier.

9. The involuntary chapter 7 petition against Emma D. Blier charges that she misapplied Blier Cedar property and participated in the Bornstein foreclosure to the detriment of Blier Cedar, thereby becoming indebted to Blier Ce-

dar, which indebtedness she has not paid. *See* Bankruptcy Code § 303(h)(1), 11 U.S.C. § 303(h)(1) (1979). Emma D. Blier contests the involuntary petition and no order for relief has entered pending discovery. The present claim of privilege arises in connection with discovery being conducted under Fed.R.Civ.P. 26 in the involuntary chapter 7 proceedings pending against Emma D. Blier.

10. *See* note 8 *supra*.

11. *See* Bankruptcy Code §§ 101(11) & 303(h), 11 U.S.C. §§ 101(11) & 303(h) (1979).

12. Maine Rule of Evidence 502 extends the cloak of confidentiality to circumstances in which the attorney reveals the contents of the communication to an attorney for another party in a pending action concerning a matter of common interest; whereas under the federal common law disclosure between counsel takes the communication beyond the protection of the privilege unless their clients are co-defendants. *See Hunydee v. United States*, 355 F.2d 183, 184 (9th Cir. 1965); *In re Grand Jury Subpoena*, 406 F.Supp. 381, 391 (S.D.N.Y. 1975).

1277, 93rd Cong., 2d Sess. at 12, n. 16 [reprinted in U.S.Code Cong. & Admin.News (1974), 7051 at 7059, n. 16]. The congressional intent favoring reception of the evidence comports with the doctrine of attorney/client privilege, which confines its application to the narrowest possible circumstances consistent with permitting a client to seek advice through the revelation of confidential information. *See Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *In re Horowitz,* 482 F.2d 72 (2d Cir. 1973), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86, *rehearing denied,* 414 U.S. 1052, 94 S.Ct. 556, 38 L.Ed.2d 340. Under the present circumstances, the federal common law provides the rule of decision determining these claims of privilege. *See Fisher v. United States, supra; Perrignon v. Bergen Brunswig Corp., supra.*

■ *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357, 358–59 (D.Mass.1950) describes the essential elements of a sufficient claim of the attorney/client privilege.[13]

    1. The asserted holder of the privilege is or sought to become a client;

    2. The person to whom the communication was made (a) is a member of the bar of a court or his subordinate, and (b) in connection with his communication is acting as a lawyer;

    3. The communication relates to a fact of which the attorney was informed (a) by his client, (b) without the presence of strangers, (c) for the purpose of securing permanently, either (1) an opinion of law, (2) legal services, or (3) assistance in some legal proceeding, (d) and not for the purpose of committing a crime or tort; and

    4. Privilege has been (a) claimed, and (b) not waived by the client.

A sufficient showing must be made by the claimant that each essential element of the

doctrine of privilege is satisfied. *United States v. Gurtner,* 474 F.2d 297, 298 (9th Cir. 1973). *See United States v. Osborn,* 561 F.2d 1334, 1339 (9th Cir. 1977).

The privilege is predicated upon the existence of an attorney and client relationship. *See United States v. United Shoe Machinery Corp., supra. Cf. United States v. Landof,* 591 F.2d 36, 39 (9th Cir. 1978) [no showing lawyer acting *qua* attorney, therefore no privilege]. The affidavits of both the clients and their attorney attesting to the fact that the Bliers were clients of Parent sufficiently demonstrate the existence of an attorney and client relationship.

■ The trustee contests the claims of privilege principally on the ground that the documents pertain to the perpetration of a fraud. Furtherance of a crime or civil fraud is unlawful and vitiates the attorney/client privilege. *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950). *See 8 Wigmore on Evidence* § 2298 (McNaughton Rev. 1961). More than a mere allegation of the commission of an unlawful act is required to vitiate the privilege, *Clark v. United States,* 289 U.S. 1, 14, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); *Union Camp Corporation v. Lewis,* 385 F.2d 143, 144 (4th Cir. 1967), but establishment of a *prima facie* case that the underlying transaction was fraudulent does dissolve the privilege, *id.; accord, Jack Winter Incorporated v. Koratron Company Inc.,* 50 F.R.D. 225, 229 (N.D.Cal.1970), even if the *prima facie* showing results from an in camera inspection of subject documents. *In re Grand Jury Proceedings Involving Berkley and Co., Inc.,* 629 F.2d 548, 552 (8th Cir. 1980). The clear statements and implications of the documents coupled with pertinent testimonial evidence lead the court to conclude that the Bliers enlisted Parent's assistance in the furtherance of a wrongful act.[14] While this conclusion may dispose of

---

**13.** *See also 8 Wigmore on Evidence* § 2292 (McNaughton Rev. 1961), at 554.

**14.** A transfer of collateral with intent to hinder the enforcement of a security interest constitutes a Class D crime, Me.Rev.Stat. Ann. tit.

17–A § 902 (Supp. 1980–81), as well as a fraudulent transfer. *Id.* tit. 14, § 3155.

    Parent's testimony that he believed MSI had no claim against the Bliers and that its second mortgage was simply part of the residue of MSI's financial problems [*cf. 8 Wigmore on*

the controversy, other deficiencies in the claimed privilege are no less dispositive.

■ Where it appears that no claim is made or that there is a knowing waiver, the privilege does not attach. *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973). There are three documents demanded by the trustee as to which no claim of privilege is made, the Bliers having expressly waived any privilege. The first of these is a letter dated April 7, 1975 from Parent to Donald Paulson, Esquire, attorney for Bornstein, requesting information about the status of a request made by Rudolph J. Blier to Bornstein in earlier correspondence. The second is a letter from Parent to Gary Sirois, Vice President and Manager of The First National Bank of Aroostook, dated March 19, 1976, which Parent has testified was written at the request of Rudolph J. Blier, explaining certain understandings between Bornstein and Rudolph J. Blier. Parent makes certain explanatory statements concerning the Bornstein and MSI mortgages, the inability to obtain a discharge from MSI, and the procedure to be followed for expunging the MSI second mortgage lien by means of a Bornstein foreclosure of his mortgages, thus forcing the MSI situation to a head. Enclosed were copies of two agreements; [15] also a letter from Paulson to Parent dated November 5, 1975 which appears not to contain relevant information. The third document as to which no claim of privilege is asserted is a letter from Parent to the register of deeds transmitting quitclaim deeds and declarations of value, for recordation.

■ The waiver of any claim of privilege respecting these documents has significance beyond their immediate availability to the trustee, *see id.* at 299, for these documents divulge the substance of the arrangement whereby Bornstein would foreclose, eliminate the MSI mortgage and return the property to the Bliers. Confidentiality must be constant from the time the communication is made, in order to avoid waiver of the privilege. *See id.* Whether the Bliers' statement that no claim is asserted be construed to mean that the communication was never considered confidential, or that the Bliers choose to waive their privilege, the legal effect is the same. The privilege does not attach. *See id.; United States v. Cote*, 456 F.2d 142, 144–45 (8th Cir. 1972).

■ Where the privilege is waived as to certain documents it is deemed waived as to relevant detail and the underlying circumstances. *Id.; United States v. Shibley*, 112 F.Supp. 734, 742 (S.D.Cal.1953). The disclosure of the contents of these letters, especially the letter to Sirois, must be deemed a waiver of the privilege in connection with the Bornstein foreclosure transaction in its entirety. With the exception of certain irrelevant information contained in Parent's ledger sheets, all of the remaining documents, containing collateral information concerning the Bornstein foreclosure transaction, are well within the waiver of the privilege. *See United States v. Cote, supra,* at 144–45.

Moreover, each document was found to be deficient as to one or more of the other essential elements of a privileged communication.

■ The requisite confidentiality was lacking as to most of the documents. The attorney/client privilege is nurtured by the desire for full and open communication

---

Evidence § 2299 (McNaughton ed. 1971), at 578 (burden of proof that communication is not in aid of unlawful act is upon party claiming privilege)], *does not negate the fact that the Bliers* continued to exercise dominion and control of the property, claimed it as an asset in subsequent financial transactions, and paid the taxes notwithstanding the Bornstein foreclosure. The Bornstein foreclosure transaction is thus tainted to the extent that what might otherwise have constituted a confidential communication

may be unprivileged. *See In re Murphy,* 560 F.2d 326, 337 (8th Cir. 1977); *Pollock v. United States,* 202 F.2d 281, 286 (5th Cir. 1953).

15. One agreement is between Bornstein and Blier Cedar, the other between Bornstein and the Bliers. Both are signed only by Bornstein and call for Bornstein to reconvey the real estate to the Bliers by quitclaim deed after foreclosure. The quitclaim deed from Bornstein is among the subpoenaed documents.

between attorney and client which can only be fostered in the confidence that secret information may not be imparted through later disclosure on the part of the attorney. *See Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). But confidentiality must have been intended. *United States v. Bump*, 605 F.2d 548, 550–51 (10th Cir. 1979). Where secrecy was neither desired nor a necessary concomitant of the communication in the circumstances, there is no sound basis for imposing the privilege. Confidentiality, once demonstrated, may be destroyed by waiver, *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973); by public use, *Jack Winter, Inc. v. Koratron Company, Inc.*, 54 F.R.D. 44, 47 (N.D.Cal.1971); by disclosure to third persons, *United States v. Johnson*, 465 F.2d 793, 795 (5th Cir. 1972); *Giordani v. Hoffmann*, 278 F.Supp. 886, 889 (E.D.Pa.1968); and by contemplation *ab initio* that the information would be disclosed, *United States v. Johnson, supra* at 795; *United States v. McDonald*, 313 F.2d 832, 835 (2d Cir. 1963). The November 5, 1975 letter from Paulson to Parent, a copy of which was enclosed with the Parent letter to Sirois, is not privileged.

■ The Bliers insist that Parent was not authorized to disclose the contents of any document, yet there is no evidence that Parent acted unilaterally or beyond his authority as counsel to the Bliers. Their affidavit is devoid of information, beyond conclusory statements that they are clients, Parent was their attorney, all communications were confidential, and that they authorized no disclosures. These unsubstantiated, self-serving statements are insufficient to support a claim of privilege. *See United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977); *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973).

■ The public nature of certain of the documents belies their alleged confidentiality. The foreclosure notices prepared by Parent were published in a newspaper and recorded in the registry of deeds. Tax lien certificates come within the classification of public documents.

■ Notwithstanding the failure to record the quitclaim deed from Bornstein to Blier Cedar, no privilege attaches. *United States v. Johnson*, 465 F.2d 793, 795 (5th Cir. 1972). *See United States v. McDonald*, 313 F.2d 832, 835 (2d Cir. 1963). The deed is property of the estate of Blier Cedar. Bankruptcy Act § 70(a)(4), 11 U.S.C. § 110(a)(4).

■ Letters written by Parent to Paulson are not privileged because confidentiality was never intended. *Giordani v. Hoffman*, 278 F.Supp. 886, 889 (E.D.Pa. 1968). The Bliers contend that these letters disclose confidential information made available by them to Parent. Disclosures of confidential information in the performance of legal services may fall within the penumbra of the privilege, *see Colton v. United States*, 306 F.2d 633 (2d Cir. 1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), but the evidence must demonstrate that the information disclosed was confidential *ab initio*. *See United States v. Goldfarb*, 328 F.2d 280, 282 (6th Cir.), *cert. denied*, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964). These documents fail that test.

■ Documents originating with third parties are uniformly held to be beyond the pale of the privilege, *see Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947); *Jack Winter, Inc. v. Koratron Company, Inc.*, 54 F.R.D. 44, 47 (N.D.Cal.1971), since the client could not have had any reasonable expectation of secrecy. *In re Fischel*, 557 F.2d 209, 212 (9th Cir. 1977); *United States v. Goldfarb, supra* at 281. For this further reason tax lien certificates of the Town of Van Buren are not privileged. All letters and materials received from Paulson by Parent are likewise not privileged, notwithstanding any contention that Parent may have represented Bornstein, and that the Maine Rules of Evidence [16] expressly confer the privilege upon confidential communications by the client or his attorney to an attorney representing another party in a pending action concerning a matter of common interest.

16. Me.Rule of Evid. 502.

Under the federal common law, the privileges extends only to disclosures between counsel representing co-defendants. *See Hunydee v. United States,* 355 F.2d 183, 184 (9th Cir. 1965).

Although communications among two or more clients with their mutual attorney are privileged, the privilege is dissolved in a subsequent adversarial contest among the clients. *See In re Colocotronis Tanker Securities Litigation,* 449 F.Supp. 828, 829–30 (S.D.N.Y.1978). Parent was counsel to Blier Cedar as well as to the Bliers as individuals in connection with the Bornstein foreclosures. Even if Bornstein were then represented by Parent as well, Blier Cedar is engaged in adversarial litigation against Emma D. Blier thereby destroying whatever privilege may have attached to these communications. Moreover, these letters are largely self-serving and primarily ministerial in nature. *See United States v. Goldfarb,* 328 F.2d 280 (6th Cir.), *cert. denied,* 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964).

The remaining documents are letters from Parent to Rudolph J. Blier which it is claimed are based on confidential communications. The privilege encompasses communications from the attorney to the client, since these may lead to inferences as to the communications of the client. *See* 8 *Wigmore on Evidence* § 2320 (McNaughton Rev. 1961). But the privilege does not attach simply by reason of the attorney/client relationship, but depends on the specific contents of the letter. *United States v. Schmidt,* 360 F.Supp. 339, 347–48 (M.D.Pa. 1973). Letters containing legal advice relating to the confidential communication qualify. *In re Fischel,* 557 F.2d 209, 212 (9th Cir. 1977). The letters from Parent to Rudolph J. Blier described and delivered documents that Parent received from Paulson. Couched in intentionally vague language, indicating the desire to bare as few of the details of the Bornstein transaction as possible, these letters do not suggest that Parent was providing legal advice. *Cf. United States v. Tellier,* 255 F.2d 441, 448 (2d Cir. 1958) [couching client's activity in indirect terms found not supportive of confidentiality claim].

The trustee demands all notes and ledgers maintained by Parent in connection with the Bliers and Blier Cedar accounts. The date and general nature of the services provided are not privileged information. *United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir. 1974); *Colton v. United States,* 306 F.2d 633, 636 (2d Cir. 1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), but the ledger sheets presented by Parent relate to some services performed in connection with transactions not here involved. Their relevance has therefore not been demonstrated. *See* Fed.R.Civ.P. 26(b)(1). Since the claim of privilege has been waived as to the substance of the Bornstein foreclosure transactions, and these transactions have been shown on a *prima facie* basis to have constituted fraudulent transfers, all ledger entries pertaining directly to the Bornstein transaction must be produced. Parent's notes are not privileged. *See Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947).

The motion for a protective order must be denied in all respects. Enter order.