**In re FEDERAL COPPER OF TENNESSEE, INC., Debtor.**

**Bankruptcy No. 79–10069.**

United States Bankruptcy Court, M. D. Tennessee.

Feb. 19, 1982.

Robert H. Waldschmidt, Steltemeier & Westbrook, Nashville, Tenn., for debtor trustee.

## ORDER

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on a motion to rehear the trustee's application to compel the law firm of Steltemeier & West-

brook (hereinafter "Steltemeier") and the accounting firm of Riccardi & Phillips (hereinafter "Riccardi") to turn over to the trustee all information in their possession concerning the bankrupt, Federal Copper of Tennessee, Inc. (hereinafter "Federal Copper"). These firms insist the materials sought by the trustee are protected by the attorney-client privilege and the work product doctrine. Upon consideration of the facts presented at the hearing on December 1, 1981, stipulations, briefs of the parties and the entire record, the court finds all the items from the list of documents appended herein to be properly discoverable material with the exception of items 4, 17–19, 23–24, 30–31, 39, 42, 46, 61 and 69–70, which are protected by the work product doctrine and therefore not subject to discovery by the trustee.

On September 29, 1981, the trustee submitted an application to this court seeking to compel Steltemeier and Riccardi to turn over all records pertaining to the bankrupt corporation.[1] After a hearing on October 26, 1981, the court granted the trustee's application.

On October 29, 1981, Steltemeier and Riccardi filed a motion requesting this court to rehear the trustee's application on the basis that (1) they had not received notice of the hearing on October 26, 1981, and (2) the information contained in their files was privileged. On November 17, 1981, the court set the aforementioned motion for hearing and ordered Steltemeier and Riccardi to bring to the hearing all documents requested by the trustee or, in the alternative, a list containing a complete description of each document.

At the hearing on December 1, 1981, Steltemeier and Riccardi failed to produce either the documents requested by the trustee or a list of said documents pursuant to this court's order of November 17, 1981. A list of these documents was subsequently provided to the court by Steltemeier and Riccardi and is appended herein. Steltemeier and Riccardi have not submitted the documents themselves to this court for examination.

Steltemeier explained at the hearing that its client, Corroon & Black (hereinafter "Corroon"), was a creditor of Federal Copper and had engaged Steltemeier to determine any legal liability of Federal Copper to Corroon. Steltemeier later employed Riccardi, an accounting firm, to assist in the investigation of Federal Copper. Steltemeier represented that Corroon wished to assert the attorney-client privilege for all documentation compiled by Steltemeier in its examination of Federal Copper. Steltemeier and Riccardi contended initially that the trustee had no authority under the bankruptcy law to seek a turnover of their records and that, in any event, these records were protected by the attorney-client privilege and work product doctrine.

The trustee asserted he had authority to seek discovery of any documentation relating to the affairs of the bankrupt corporation and that no applicable privilege precluded discovery of these records. The trustee further contended that the information in the records was necessary to determine the validity of any legal claim which the bankrupt corporation had against its parent, Norval Industries, Inc. (hereinafter "Norval"). The only records of Federal Copper possessed by the trustee had been obtained from Norval, who had held them for a year prior to the trustee's request for discovery. The trustee submitted that he needed the records held by Steltemeier and Riccardi to verify the authenticity of the documentation received from Norval.

The issue is now before this court for final resolution.

■ This proceeding is governed by the Bankruptcy Act of 1898. Under the Act, the trustee is provided wide latitude to utilize discovery to obtain any documentation pertaining to the bankrupt's conduct or property. See, e.g., Brannon v. Gay, 527 F.2d 799, 802 (7th Cir. 1976); Freeman v. Seligson, 405 F.2d 1326, 1333 (D.C.Cir.1968); Chereton v. United States, 286 F.2d 409, 413 (6th Cir.), cert. denied, 366 U.S. 924, 81 S.Ct.

---

1. All the records compiled by Riccardi are currently held by Steltemeier.

1351, 6 L.Ed.2d 584 (1961); *In re Eastern Utilities Investing Corp.*, 98 F.2d 620, 622 (3rd Cir. 1938); *In re Samuels*, 215 F. 845, 850 (2nd Cir. 1914); *In re Fixen & Co.*, 96 F. 748, 755 (S.D.Cal.1899); *In re Ratmansky*, 7 B.R. 829, 833 (Bkrtcy.E.D.Pa.1980). *See also* 2 Collier on Bankruptcy § 21.12, at 308 (14th ed. 1976).

█ The discovery of documentation by the trustee is governed by Rules 205 and 734 of the Federal Rules of Bankruptcy Procedure. Rule 205 provides that, upon application of any party in interest, the court may order the examination of any person. The application should be in writing unless made during a hearing or examination or unless a local rule otherwise provides. Rule 734 of the Federal Rules of Bankruptcy Procedure, which makes Rule 34 of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings, specifically regulates a party's request for the production of documents.[2] A party may request any documentation which is relevant to the subject matter of the pending action or reasonably calculated to uncover useful evidence. *Beneficial Finance Co. of New York, Inc. v. Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y.1975). The trustee in this case requested, both in writing and at the hearing conducted on this matter, that this court compel Steltemeier and Riccardi to turn over all records pertaining to the bankrupt corporation. Steltemeier and Riccardi were fully aware of this request and do not now question the relevancy of the documents in question. Under these circumstances, this court clearly has the power to order Steltemeier and Riccardi to turn over these documents to the trustee. *See Kaye v. Spach*, 302 F.2d 298, 302 (5th Cir. 1962); *Ulmer v. United States*, 219 F. 641, 645 (6th Cir. 1915); *In re United States Graphite Co.*, 159 F. 300, 301 (E.D.Pa.1908).

The next question, then, is whether the records sought by the trustee are protected from discovery by either the attorney-client privilege or the work product doctrine.

Federal Rule of Evidence 501, made applicable to bankruptcy proceedings by Rule 917 of the Federal Rules of Bankruptcy Procedure, defines the federal rule for privileges as follows:

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

The trustee in this case seeks the turnover of records to aid in his investigation of the bankrupt corporation pursuant to the federal law of bankruptcy. Any applicable privilege is therefore governed by federal common law. *In re Blier Cedar Co.*, 10 B.R. 993, 998–999 (Bkrtcy.D.Me.1981); *Matter of Mori*, 1 B.R. 265, 266 (Bkrtcy.S.D.Fla.1979).

█ Steltemeier and Riccardi first rely on the attorney-client privilege to protect the documents in question from discovery by the trustee. The purpose of the attorney-client privilege under federal common law is to encourage "full and frank communication between attorneys and their clients." *United States v. Boffa*, 513 F.Supp. 517, 522 (D.Del.1981). *See also Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584, 592 (1981). The privilege, however, has been narrowly construed by federal courts on the basis that its utilization "obstructs the search for truth" and "its benefits are at best indirect and speculative." *United States v. Boffa*, 513 F.Supp. at 522. *See also Weil v. Invest-*

---

**2.** Although this is not an adversary proceeding, Rule 914 of the Federal Rules of Bankruptcy Procedure provides that Rule 734 shall apply in all contested matters not rising to the level of adversary proceedings.

ment/Indicators, Research and Management, Inc., 647 F.2d 18, 24 (9th Cir. 1981); Matter of Walsh, 623 F.2d 489, 493 (7th Cir.), cert. denied Walsh v. United States, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 862–863 (D.C.Cir.1980); In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 802 (3rd Cir. 1979). Accordingly, the burden of proof is on the party seeking to claim the privilege. Weil v. Investment Indicators, Research and Management, Inc., 647 F.2d at 25; United States v. Bump, 605 F.2d 548, 551 (10th Cir. 1979); In re Matter of Grand Jury Empanelled Feb. 14, 1978 (Markowitz), 603 F.2d 469, 474 (3rd Cir. 1979); United States v. Osborn, 561 F.2d 1334, 1339 (9th Cir. 1977); In re Blier Cedar Co., 10 B.R. at 997.

■ To meet this burden of proof, a party asserting the attorney-client privilege under the federal common law must establish that (1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made is a member of the bar or his subordinate and was acting as a lawyer in connection with the communication, (3) the communication concerns a fact of which the attorney was informed by his client without the presence of strangers, for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding and not for the purpose of committing a crime or tort, and (4) the privilege has been claimed and not waived by the client. United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358 (D.Mass.1950). Accord: Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 601–602 (8th Cir. 1977); United States v. Jones, 517 F.2d 666, 670, rehearing denied 521 F.2d 815 (5th Cir. 1975); United States v. Boffa, 513 F.Supp. at 523; J. P. Foley & Co. v. Vanderbilt, 65 F.R.D. 523, 526 (S.D.N.Y. 1974); In re Blier Cedar Co., 10 B.R. at 999.

■ An examination of the records in question reveals that the great majority of these documents are simply communications of fact to the Steltemeier law firm. (Items 1–3, 5–16, 20–22, 26, 28–29, 41, 44–45 and 71 of the appended list). The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn Co. v. United States, 449 U.S. at 395, 101 S.Ct. at 685, 66 L.Ed.2d at 595. See also Diversified Industries, Inc. v. Meredith, 572 F.2d at 611; American Standard, Inc. v. Bendix Corp., 80 F.R.D. 706, 709 (W.D.Mo., W.D. 1978); City of Philadelphia v. Westinghouse Electric Corp., 205 F.Supp. 830, 831 (E.D.Pa. 1962).

■ Many of the remaining documents are communications between the attorney and third parties and thus not subject to the attorney-client privilege. (Items 18, 25, 32–33, 36–37, 40, 47, 49, 51, 60, 62 and 65–67 of the appended list). See United States v. Johnson, 465 F.2d 793, 795 (5th Cir. 1972); In re Blier Cedar Co., 10 B.R. at 1001.

■ Finally, a number of documents remain which could contain confidential communications between attorney and client. (Items 4, 17, 19, 23–24, 27, 30–31, 34–35, 38–39, 42–43, 46, 48, 50, 52–59, 61, 63–64 and 68–70 of the appended list). Steltemeier and Riccardi however, did not produce these documents for the court's examination nor did they offer any proof as to the confidential nature of these documents. They merely make the blanket assertion that the documentation sought by the trustee is protected by the attorney-client privilege. This unsubstantiated contention is insufficient to carry Steltemeier and Riccardi's burden of proof. United States v. Davis, 636 F.2d 1028, 1044 (5th Cir. 1981); United States v. Hodgson, 492 F.2d 1175, 1177 (10th Cir. 1974); Commercial Credit Corp. v. Repper, 309 F.2d 97, 98–99 (6th Cir. 1962); In re Blier Cedar Co., 10 B.R. at 1001.[3]

---

3. The defendants do not rely on any accountant-client privilege. In any event, such a privilege is not recognized under federal common law. Couch v. United States, 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973); United States v. Davis, 636 F.2d at 1043; Fal-

Steltemeier and Riccardi also rely on the work product doctrine to shield this documentation from discovery by the trustee. In contrast to the attorney-client privilege, which exists to protect confidential communications, the work product doctrine is designed primarily to preserve the "integrity of the adversarial system" by preventing the discovery of certain documentation prepared by an attorney or his agent in anticipation of litigation. *In re International Systems and Controls Corp. Securities Litigation*, 91 F.R.D. 552, 556 (S.D.Tex. 1981). *See also Hickman v. Taylor*, 329 U.S. 495, 509–512, 67 S.Ct. 385, 392–394, 91 L.Ed. 451 (1947). Federal Rule of Civil Procedure 26(b)(3) defines the work product doctrine as follows:

"Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

The work product privilege includes any work product material compiled in previous, terminated litigation, *In re Grand Jury Subpoena Dated November 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980); *United States v. Capitol Service, Inc.*, 89 F.R.D. 578, 585 (E.D.Wis.1981), and also protects any "material prepared by agents

for the attorney." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141, 154 (1975). In addition, several federal courts have held that "opinion" work product, defined as an attorney's mental impressions and opinions and including an attorney's notes and memoranda, is absolutely protected. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 732–735 (4th Cir. 1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975); *In re Grand Jury Proceedings (Duffy)*, 473 F.2d 840, 848 (8th Cir. 1973); *United States v. Bonnell*, 483 F.Supp. 1070, 1078 (D.Minn.1979); *United States v. Chatham City Corp.*, 72 F.R.D. 640, 643 (S.D.Ga.1976). While the court is not inclined to adopt this position at the present time, this court does recognize that the discovery of opinion work product requires proof of extraordinary and unusual circumstances evidencing a genuine need for such documents. *See Upjohn Co. v. United States*, 449 U.S. at 397–401, 101 S.Ct. at 686–688, 66 L.Ed.2d at 596–599; *In re International Systems and Controls Corp. Securities Litigation*, 91 F.R.D. at 556.

Under these guidelines, Steltemeier's notes and memoranda (Items 4, 17, 19, 23–24, 30–31, 39, 42, 46, 54–56, 61 and 69–70 of the appended list) are clearly work product and thus outside the scope of discovery. It is undisputed that these documents were prepared in anticipation of potential litigation. Furthermore, the trustee has made no showing that he needs these documents and, in fact, stated at the hearing that he did not wish to obtain these memoranda. The reports prepared by the accounting firm Riccardi for Steltemeier (Item 18 of the appended list), including a summary of interviews of various people, also come within the work product privilege. *See United States v. Nobles*, 422 U.S. at 238–239, 95 S.Ct. at 2170; *In re Grand Jury Proceedings (McCoy and Sussman)*, 601 F.2d 162, 171 (5th Cir. 1979); *United States v. Chatham City Corp.*, 72 F.R.D. at

sone v. United States, 205 F.2d 734, 738–742 (5th Cir. 1953), *cert. denied*, 346 U.S. 864, 74

S.Ct. 103, 98 L.Ed.375; *Matter of Mori*, 1 B.R. at 266.

642–643. The trustee can conduct interviews with these potential witnesses just as the Riccardi firm did. Steltemeier and Riccardi, however, would be required to turn over the names of the persons interviewed since these names are not protected from discovery by the work product privilege. *See* Wright and Miller § 2023, at 194 (1970).

 As for the remaining documents, Steltemeier and Riccardi have presented no proof that they contain any work product doctrine. Nor have they produced these documents for the court's examination. Under these circumstances, Steltemeier and Riccardi have failed to establish that this documentation is protected from discovery by the trustee. *See Casson Construction Co. v. Armco Steel Corp.*, 91 F.R.D. 376, 385 (D.Kan.1980); *Feldman v. Pioneer Petroleum, Inc.*, 87 F.R.D. 86, 88 (W.D.Okl.1980); 8 Wright and Miller § 2023, at 196 (1970).

Accordingly, the trustee's application to compel the turnover of documents from Steltemeier and Riccardi is granted in part and denied in part. The court's previous order of October 26, 1981, is modified to require Steltemeier and Riccardi to turn over all items in the appended list except items 4, 17–19, 23–24, 30–31, 39, 42, 46, 61 and 69–70. The court further orders Steltemeier and Riccardi to submit to the trustee a list of the persons interviewed in item 18 within fifteen (15) days of the date of this Order.

IT IS THEREFORE SO ORDERED.

## APPENDIX

### LIST OF DOCUMENTS CONTAINED IN THE FILES OF STELTEMEIER & WESTBROOK

1. Statement dated October 12, 1979, setting forth earned premium concerning policies with United States Fidelity & Guaranty Company

2. Statement dated January 23, 1980, regarding retro-premium adjustment for policies with United States Fidelity and Guaranty Company

3. Statement dated July 11, 1979, regarding retro-premium adjustment for policies with United States Fidelity and Guaranty Company

4. Personal hand notes of R. W. Steltemeier dated June 17, 1980

5. Various charts concerning premium charges of all policies involved as broken down by Corroon & Black

6. Insurance finance agreement dated February 16, 1978, between Corroon and Black and Federal Copper Aluminum

7. Insurance finance agreement dated May 17, 1978, between Corroon & Black and Federal Copper Aluminum

8. Insurance finance agreement dated December 27, 1978, between Corroon & Black and Federal Copper Aluminum

9. Copy of a check dated November 17, 1978, from Federal Copper of Tennessee, Inc.

10. Copy of a check dated December 13, 1978, from Federal Copper of Tennessee, Inc.

11. Copy of a check dated November 14, 1978, from Norval Industries, Inc.

12. Premium finance agreement (undated)

13. Agency agreement declaration between Corroon and Black and United States Fidelity & Guaranty Company dated September 21, 1978

14. Purchase agreement dated January 23, 1979, between The Reading-Tennessee, Inc., Superior Companies, Inc., Third National Bank in Nashville, Superior Companies Trading Corporation

15. Balance sheet of Federal Copper of Tennessee

16. Financial statement of Federal Copper Aluminum Company prepared by Leventhal and Horra, CPA, for the years ended October 2, 1977 and September 30, 1976

17. Personal hand notes of Joel E. Jordan (undated)

18. Various reports prepared by Charles Atwood with the firm of Riccardi & Phillips, which include a summary of interviews of various people, both with

Federal Copper of Tennessee and Norval Industries, and certain questionnaires filed by said people. All reports contain the heading of "Strictly Confidential" & "Privileged Communication"

19. Hand-written notes of Joel E. Jordan which are undated

20. Copies of all insurance policies involved

21. Undated, combined financial statement of Federal Copper and Aluminum, Federal Copper of Tennessee, Inc. and all other subsidiaries

22. Copy of the Creditors' Petition in this cause

23. Hand written notes of Joel E. Jordan made from a review of the Bankruptcy file

24. Hand written notes of Joel E. Jordan made from attendance at hearing of First Meeting of Creditors of Murray Valene, President of Federal Copper of Tennessee

25. Correspondence dated August 24, 1979, from R. W. Steltemeier to Norval Industries

26. Copy of the lawsuit filed by Federal Copper and Aluminum Company of Tennessee against Motion Industries, Inc. in the Circuit Court of Giles County, Tennessee, and a copy of the Petition to remove said lawsuit in Federal Court

27. Correspondence from Corroon and Black to William Steltemeier dated August 20, 1979

28. Copy of the Discharge Notice of Murray Valene

29. Copy of Notice of First Meeting of Creditors concerning Bankruptcy of Murray Valene

30. Undated hand-written notes of R. W. Steltemeier

31. Copy of memorandum to file dictated by Joel E. Jordan and dated December 31, 1979

32. Correspondence to Register of Deeds in Giles County dated January 8, 1980, requesting copies of certain Deeds

33. Correspondence dated January 9, 1980, from Riccardi & Phillips to William Steltemeier relating to statement for services

34. Statement dated January 30, 1980 from Steltemeier and Westbrook to Corroon & Black for services rendered

35. Correspondence dated January 30, 1980, to Corroon and Black from William R. Steltemeier

36. Correspondence dated March 31, 1980, to attorney Joseph L. Bard in Minneapolis, Minnesota from R. W. Steltemeier

37. Correspondence dated April 10, 1980, to attorney Joseph L. Bard in Minneapolis, Minnesota from R. W. Steltemeier

38. Correspondence dated May 19, 1980 from R. W. Steltemeier to Corroon & Black

39. Memorandum to file from Joel E. Jordan dated June 11, 1980

40. Correspondence from Joel E. Jordan to attorney Joseph L. Bard in Minneapolis dated June 25, 1980, with enclosure of a proposed Promissory Note

41. Correspondence dated July 15, 1980, to Corroon & Black, enclosing copy of the Promissory Note and a Resolution of the Board of Directors

42. Legal pad containing various handwritten notes of R. W. Steltemeier

43. Correspondence dated May 29, 1980 from Joel E. Jordan to Corroon & Black

44. Copy of the Deed obtained from Register's Office in Giles County, Tennessee

45. Copy of the Charter of Federal Copper of Tennessee, Inc.

46. Memorandum to file from R. W. Steltemeier dated May 4, 1980

47. Correspondence dated July 21, 1981 to James Tiller, Attorney in Hamill, Minnesota

48. Correspondence dated October 14, 1981, from Joel E. Jordan to Corroon & Black

49. Correspondence dated October 21, 1981, to Joseph L. Bard in Minneapolis, Minnesota from Joel E. Jordan

50. Correspondence from Corroon and Black to Joel E. Jordan dated October 20, 1981

51. Correspondence dated July 29, 1981 from Joel E. Jordan to James Tiller, attorney in Minnesota

52. Correspondence dated November 4, 1980, to Jim Sturdivant at Corroon & Black from Joel E. Jordan

53. Correspondence dated December 3, 1980 to Phil Barnes at Corroon and Black from Joel E. Jordan

54. Memorandum dated December 5, 1979 from R. W. Steltemeier to file

55. Memorandum dated December 14, 1979, from Joel E. Jordan to file

56. Memorandum dated November 26, 1979, from R. W. Steltemeier to file

57. Correspondence dated October 8, 1979 from Corroon and Black to William Parsons with lawfirm of Steltemeier and Westbrook

58. Correspondence dated October 4, 1979 to Corroon & Black from Bill Parsons, attorney

59. Correspondence dated September 14, 1979 from Bill Parsons to Corroon and Black

60. Correspondence dated September 10, 1979 from Bill Parsons, attorney to Norval Industries

61. Memorandum to file from R. W. Steltemeier dated August 24, 1979

62. Correspondence dated August 24, 1979, from R. W. Steltemeier to Norval Industries

63. Correspondence dated August 9, 1979, from R. W. Steltemeier to Corroon & Black

64. Correspondence dated July 3, 1979, from R. W. Steltemeier to Corroon & Black

65. Correspondence dated July 28, 1979, from Joseph L. Bard, attorney, to R. W. Steltemeier

66. Correspondence dated June 21, 1979 from Norval Industries to R. W. Steltemeier

67. Correspondence dated June 19, 1979, from R. W. Steltemeier to Joseph L. Bard, attorney

68. Correspondence dated June 19, 1979, from R. W. Steltemeier to Corroon & Black

69. Memorandum dated June 11, 1979 from R. W. Steltemeier to the file

70. Hand written notes of R. W. Steltemeier (undated)

71. Copies of various U.C.C.–1 statements from Secretary of State's office