## In re CUMBERLAND INVESTMENT CORPORATION, Debtor.

### Bankruptcy No. 89–11051.

United States Bankruptcy Court,
D. Rhode Island.

Oct. 23, 1990.

Edward J. Bertozzi, Jr., Edwards & Angell, Providence, R.I., for trustee.

Jonathan F. Oster, Oster & Groff, Lincoln, R.I., for Harold Chorney.

Andrew S. Richardson, Boyajian, Harrington & Richardson, Providence, R.I., for John Boyajian.

Peter J. Furness, Hinckley, Allen, Snyder & Comen, Providence, R.I., for Eastland Bank.

## DECISION AND ORDER

Before ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on October 17, 1990 on the objection of Harold Chorney, the former principal of the debtor corporation, to the Trustee's Motion for a Rule 2004 Examination of John Boyajian, Esq., the attorney of record for the debtor corporation. Chorney objects to the Trustee's proposed examination of Boyajian on the ground that, in addition to serving as counsel for the corporation, Mr. Boyajian also represented him personally, and that "confidences were shared, and advice given to Harold Chorney, not only ... as President of the Debtor CIC but also in his personal capacity." (Chorney's Objection to motion, October 1, 1990.)

It is undisputed that the Trustee has the right to waive the attorney/client privilege on behalf of the estate, *Commodity Futures Trading Comm. v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). However, in order to conduct the examination without objection on the ground of attorney/client privilege, the Trustee requests a finding that no such relationship ever existed between Harold Chorney, individually, and John Boyajian.

At the hearing, Boyajian testified that it was his belief and understanding that at all times he represented *only* the debtor corporation. In opposition, Chorney insists that, in his (Chorney's) mind, Boyajian was representing him personally relative to these CIC Chapter 11 proceedings. Upon

consideration of the testimony and the credibility of the witnesses, the exhibits, and the entire record of each and every hearing held during the pendency of this case, we find as a fact and conclude as a matter of law that the relationship of attorney/client never came into existence between John Boyajian and Harold Chorney [1], individually.

Cumulatively, the evidence controverts Chorney's allegation that an attorney/client relationship existed between him and Boyajian. To illustrate, at no time during the pendency of this Chapter 11 case has Boyajian indicated to the Court that he was representing Chorney personally, nor has he filed any pleadings on Chorney's personal behalf, nor has he entered an appearance in any court proceeding on Chorney's personal behalf, nor has he in *any* way, as far as this Court can tell, conducted himself in a manner which would suggest that he was representing Chorney personally. The record speaks clearly for itself, quite to the contrary, and need not be further repeated or summarized here.

As for what took place between Boyajian and Chorney in private, and to the extent that it is in dispute, the credibility issue is resolved against Harold Chorney. Mr. Boyajian's testimony at the October 17, 1990 hearing fairly states the relationship between him, the debtor, and Harold Chorney, and we accept his version of the situation, as opposed to Mr. Chorney's account.

In addition, we find that, overall, the exhibits support the Trustee's position.

Although the attorney/client relationship cannot be formed without the consent of the attorney and the individual seeking representation, *In the Matter of Olson*, 21 B.R. 123, 126 (Bankr.D.Neb. 1982), the required consent may be either express or implied, by the conduct of the parties. *In re Chantilly Const. Corp.*, 39 B.R. 466 (Bankr.Va.1984). To establish implied consent, however, the parties must manifest an intention to create the attorney/client relationship. *Nolan v. Foreman*, 665 F.2d 738, 739, n. 3 (5th Cir.1982); *see also, Westinghouse Elec. Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978). In this case, neither Boyajian nor Chorney has exhibited such an intention. Rather, Chorney's only overt actions were consistent with the hiring of Boyajian as counsel for the debtor corporation [2], and we find that to be the extent of the relationship between the parties. In addition, "[t]he fact that an attorney represents a corporation does not thereby make that attorney counsel to the individual officers and directors thereof." *Stratton Group, Ltd. v. Sprayregen*, 466 F.Supp. 1180, 1185 (S.D.N.Y.1979); *see also, Evans v. Artek Systems Corp.*, 715 F.2d 788 (2nd Cir.1983).

The facts herein are fairly analogous to those in *United States v. Keplinger*, 776 F.2d 678 (7th Cir.1985), where the court held that the circumstances did not support a finding of any implied representation [3].

---

1. Indeed, if this Court were aware at any time during the pendency of this case, of the assertion or understanding by either John Boyajian or Harold Chorney that Boyajian was representing Chorney *and* the debtor in possession, we would have, sua sponte and forthwith, ordered either the debtor or Harold Chorney to obtain separate counsel. Such separation is well advised in even the most benign case, for obvious reasons such as actual or potential conflict of interest, the appearance of impropriety, etc. In the instant case, the need for separate counsel is even more obvious, and compelling.

2. In fact, Mr. Chorney's first public protestation that Boyajian was also his personal lawyer, came only after the Trustee filed a notice to take the deposition of Mr. Boyajian. In the circumstances, it appears that Chorney's attorney/client privilege argument is an afterthought.

3. These circumstances consisted of: (1) no express agreement of individual representation; (2) none of the defendants ever asked the attorneys directly or indirectly to represent him individually; (3) the defendants never sought individual legal advice or asked questions relating to personal representation; (4) never made any confidential statements of an incriminating nature to the attorneys from which it could be inferred that the defendants believed that the attorneys were representing them individually; (5) neither attorney believed he represented the defendants individually, nor did they believe the defendants thought they enjoyed such representation. (In a footnote, the court noted that the defendants failed to identify specific communications which they claimed to be privileged and that "the claim of privilege must be made and sustained on a question by question ... basis." *Id.* at 700, n. 13 (citation omitted)).

In that case, as here, the defendants argued that they *subjectively believed* that the attorneys represented them individually. The court, while acknowledging its previous decision in *Westinghouse Elec. Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.1978), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978) [4], rejected the defendants' argument that "an individual's mere subjective belief that he is represented individually will always be sufficient to demonstrate that such a relationship existed for the purpose of the attorney/client privilege." *Id.* at 701. Instead, the court found that "there is little or no evidence in this case that defendants either sought legal advice on an individual basis or manifested in any way their belief that they were being represented individually." *Id.* Moreover, the court held that "no individual attorney/client relationship can be inferred without some finding that the potential client's subjective belief is minimally reasonable." *Id.; see also, In re Grand Jury Proceedings (Jackier)*, 434 F.Supp. 648, 650 (E.D.Mich.1977) (corporate officer may invoke attorney/client privilege individually only if he "makes it clear when he is consulting the company lawyer that he personally is consulting the lawyer, and the lawyer sees fit to accept and give communication knowing the possible conflicts that could cause ..."), *aff'd*, 570 F.2d 562 (6th Cir.1978). Chorney's alleged present subjective belief that Boyajian also represented him individually is rejected, as being less than minimally reasonable.

■ Notwithstanding our ruling above, even if the evidence did support the existence of attorney/client relationship between Boyajian and Chorney, the privilege does not attach simply by reason of the attorney/client relationship, but depends additionally upon the specific contents of the communication. *In re Blier Cedar Co., Inc.*, 10 B.R. 993, 1002 (Bankr.D.Me. 1981); *U.S. v. Schmidt*, 360 F.Supp. 339, 347–48 (M.D.Pa.1973). Here, Chorney has offered no evidence as to the specific confidences he wishes to protect, but rather has only made unsubstantiated and self-serving statements as to the alleged confidentiality of unidentified communications, without specificity as to either time or subject matter. This is clearly insufficient to support a claim of attorney-client privilege. *Blier, supra* at 1001 (citing *U.S. v. Osborn*, 561 F.2d 1334, 1339 (9th Cir.1977); *U.S. v. Gurtner*, 474 F.2d 297, 298 (9th Cir.1973)).

■ Moreover, the Trustee intends to investigate the actions and conduct of CIC and its principal, both pre and post-petition, in a case that has proven to be proliferate with misconduct, mismanagement, bad faith, willful disobedience of Code requirements and specific Court orders, and much more, all by Harold Chorney. *See, e.g., In re Cumberland Investment Corp.*, 116 B.R. 353 (Bkrtcy.D.R.I.1990); *In re Cumberland Investment Corp.*, 118 B.R. 3 (Bkrtcy.D.R.I.1990). In such a situation, the attorney/client privilege does not attach. To hold otherwise would be an invitation to widespread abuse. *See In re Blier, supra*, where the court explained that:

> Furtherance of a crime or civil fraud is unlawful and vitiates the attorney/client privilege. *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950). *See* 8 *Wigmore on Evidence* § 2298 (McNaughton Rev.1961). More than a mere allegation of the commission of an unlawful act is required to vitiate the privilege, *Clark v. United States*, 289 U.S. 1, 14, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); *Union Camp Corporation v. Lewis*, 385 F.2d 143, 144 (4th Cir.1967), but establishment of a prima facie case that the underlying transaction was fraudulent does dissolve the privilege, *id.; accord, Jack Winter Incorporated v. Koratron Company Inc.*, 50 F.R.D. 225, 229 (N.D.Cal.1970), even if the prima facie showing results from an in camera inspection of subject documents. *In re Grand Jury Proceedings*

---

**4.** In *Westinghouse, supra,* the court held that the scope of the attorney/client relationship " 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.' " *Keplinger, supra* at 701 (citing *Westinghouse, supra* at 1319).

*Involving Berkley and Co., Inc.,* 629 F.2d 548, 552 (8th Cir.1980).

*In re Blier Cedar Co., Inc.,* 10 B.R. 993, 999–1000, (1981).

Therefore, in addition to our holding that no attorney/client relationship existed between Messrs. Boyajian and Chorney, we also rule where the investigation sought to be conducted by the Trustee is supported by previous prima facie findings of fraud and mismanagement, any claimed privilege is dissolved.

Accordingly the Trustee's motion for a Rule 2004 examination of John Boyajian is GRANTED, and Boyajian is ordered to answer all questions propounded by the Trustee, without objection by Chorney on the ground of attorney/client privilege.