## In re CUMBERLAND INVESTMENT CORPORATION, Debtor.

### Bankruptcy No. 89–11051.

United States Bankruptcy Court,
D. Rhode Island.

July 11, 1990.

John Boyajian, Boyajian, Harrington & Richardson, Providence, R.I., for debtor.

Peter J. Furness, Hinckley, Allen, Snyder & Comen, Providence, R.I., for Eastland Bank.

Edward J. Bertozzi, Jr., Edwards & Angell, Providence, R.I., for Examiner, Michael Weingarten.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on May 22, 23, 24, June 21 and 22, 1990, on the Motion of the Debtor[1] to "Strike Report [Number Two] of Examiner as a Sham and Deception upon this Court". The examiner, Michael Weingarten, and Eastland Bank, the largest secured creditor, both oppose the motion. Also heard and taken under advisement was the Motion of John Boyajian, Esq., to Withdraw as Attorney for the Debtor in Possession, basically for the reason that Harold Chorney has no confidence in him. Based upon the evidence presented at the numerous and lengthy hearings, we make the following findings, conclusions, and rulings:

■ 1. The evidence and the arguments advanced by the debtor in support of its motion to strike the examiner's Report Number Two fail to establish a basis for granting the broad relief sought. Harold Chorney's allegations of bias, prejudice, conspiracy, conflict of interest and slander, all without meaningful evidentiary support, are rhetorical and not substantive. The assertions are general in nature, without supporting facts, and are characteristic of the wide-ranging and poorly defined allegations typically seen in laymen's pleadings. The evidence has demonstrated, however, that the coin industry in general appears to

---

**1.** The instant pleading was prepared and filed by the principal of the debtor, Harold Chorney, and not by the debtor's appointed counsel, John Boyajian, Esq. At the insistence of the Court, however, the motion was argued and tried by Mr. Boyajian.

be plagued with conflict of interest and confidentiality problems, attributable, partially, at least, to the network nature of the business, and the close knit association of dealers and investors regularly involved in the silver dollar trading community. Therefore, the fact that the backgrounds of numismatists Nos. 1 and 2 turned out to be less than ideal is not surprising, and that fact, by itself, cannot support the debtor's motion to strike the examiner's Report Number Two. Moreover, the witnesses who testified on behalf of the debtor were all biased and influenced, to varying degrees, by their connection with the debtor, and we have difficulty with the credibility of the debtor's evidence, in general.

2. Giving Mr. Chorney the benefit of any doubt, however, concerning the newspaper article referred to in Report Number Two as "the duck sheet", we rule that that page may be prejudicial to the debtor, and is not particularly relevant to this proceeding, and ORDER that single item stricken from Report Number Two.

3. The remainder of Report Number Two represents the examiner's findings and conclusions, compiled after a thorough investigation of the debtor's pre and post-petition business affairs. After hearing, we find no evidence that the examiner either intended to or conspired to misrepresent any of his findings or conclusions. On the contrary, we conclude that the examiner was performing and complying with his court appointed duties impartially, and without prejudgment of the debtor's conduct and/or financial affairs.

4. While the debtor has placed great emphasis during the course of this proceeding on Eastland Bank's alleged misconduct with respect to the coins in its possession, we find that there is no connection between Harold Chorney's allegations and the examiner's performance of his duties or the writing of his reports. Moreover, we agree with the examiner's tacit rejection of said

allegations, and find that they are totally unsupported in the context of this proceeding. While on the subject, we find that Chorney represented, both orally and in writing to customers, that CIC's coins were all of grade MS65 or higher. However, as things have developed upon independent investigation, and when it became evident, even to Chorney, that this contention was out of touch with reality and totally unsupportable [2], he attempted to overcome the problem by fabricating the theory that the Bank had switched the inventory. There is no credible evidence to support this irresponsible allegation, and we agree with the examiner and the Bank that Chorney's belated raising of this issue, only after the publication of Report Number Two, constitutes relevant and material evidence of its falsity, and of the debtor's good faith in this proceeding, generally.

5. Although it is nearly impossible to overlook Harold Chorney's presence as the principal and chief executive officer of Cumberland Investment Corporation, it is still Cumberland Investment Corporation that is before us, and we are not satisfied that it is in the best interest of anyone (except perhaps Harold Chorney), to discharge John Boyajian as debtor's counsel and to approve the hiring of new counsel, all at considerable duplication and expense [3]. Mr. Boyajian's representation of the debtor has been most competent, in this Court's opinion, and in the context of these proceedings to date, Chorney's personal preference is not the standard by which debtor's counsel should be removed and/or replaced. In the circumstances, it would be clearly disadvantageous timewise, and economically burdensome to creditors, to bring in new counsel at this late stage. With the bulk of a substantial retainer undoubtedly to be consumed while new counsel familiarizes him(her)self with the case, the duplication of effort that would result from Chorney's request requires its denial.

---

2. Compare Chorney's valuation figures given in the schedules ($35,000,000), with the range of figures that has emerged since the filing ($1.4 million to a high of $7.6 million).

3. The firm of Looney & Grossman has agreed to enter its appearance on behalf of the debtor, upon the payment of a $25,000 retainer. Mr. Boyajian has already been paid $25,000, and represents that his total time as of June, 1990, exceeds $50,000.

6. Additionally, the record gives no indication that a change of counsel will significantly alter the direction of the case, which the Court expects will result in the filing of a plan of reorganization, as was recently represented by Mr. Boyajian. Of course, if Mr. Chorney insists on hiring separate, private counsel, he is free to engage the services of any attorney, at his own (and not the debtor's) expense, to represent his individual interests in this case, whatever they may be.

Accordingly, it is ORDERED that:

(1) The debtor's Motion to Strike the Examiner's Report No. Two is DENIED, except as to the single page referred to as "the duck sheet"; and

(2) The motion of John Boyajian, Esq. to withdraw as counsel to the debtor is DENIED.

Enter Judgment accordingly.