7 F.3d 218
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Harold F. CHORNEY, Appellant,
v.
Michael WEINGARTEN, et al., Appellees.
 No. 93-1094.
 United States Court of Appeals,
First Circuit.
 September 23, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND
 Harold F. Chorney on brief pro se.
 Edward J. Bertozzi, Jr. and Edwards & Angell, on brief for appellee John F. Cullen, Trustee.
 D.R.I.
 AFFIRMED.
 Before Breyer, Chief Judge, Selya and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 Harold F. Chorney challenges the district court's affirmance of a bankruptcy court order of July 2, 1992, finding him in civil contempt for a "continuous, deliberate, and unjustified interference with the orderly progress of this bankruptcy case," and ordering him to pay $200,000 compensation to the trustee. We affirm.[1]
 
 
 2
 The bankruptcy proceeding from which the instant appeal arises has a long and tangled history. The docket entries alone consume almost 79 pages as of the date of the contempt order challenged here. On this appeal we have been provided with a partial record consisting primarily of select materials generated in 1991 and 1992. The following background facts are culled from three earlier published opinions of the courts below. In re Cumberland Inv. Corp., 116 B.R. 353 (Bankr. D.R.I. 1990); In re Cumberland Inv. Corp., 118 B.R. 3, 4 (Bankr. D.R.I. 1990); In re Cumberland Inv. Corp., 133 B.R. 275 (D. R. I. 1991).
 
 
 3
 Debtor, Cumberland Investment Corporation ("CIC"), a wholly owned Rhode Island subsidiary of a Canadian corporation, Wescap Enterprises, Ltd., was in the business of buying and selling numismatic coins and stamps. Chorney was a principal of CIC and chief executive officer of Wescap. Eastland Bank was the major secured creditor.
 
 
 4
 In November, 1989, Eastland and two other creditors petitioned CIC into bankruptcy. About a month later, CIC converted the Chapter 7 involuntary petition into a voluntary Chapter 11 proceeding. Judge Votolato initially denied an Eastland motion for appointment of a Chapter 11 trustee, instead authorizing appointment of an examiner. Pending the outcome of the examiner's investigation, CIC was restrained from selling any coins without court approval.
 
 
 5
 There ensued seven months of investigation, a series of five reports from the examiner, and at least 11 days of contested hearings and motions by both sides. On the basis of the evidence thus generated, which reflected a "pervasive, broad course of debtor misconduct" and the debtor's "repeated failure to respond adequately to an overwhelming amount of negative evidence," the judge reversed course. In re Cumberland Inv. Corp., 118 B.R. at 4-5, 6. He granted a renewed motion for appointment of a trustee, expressing regret that he had earlier denied it.
 
 
 6
 The court simultaneously ordered the immediate discharge of all CIC employees and three principals, including Chorney. In re Cumberland Inv. Corp., 118 B.R. at 7-8. Among the misdeeds leading to the discharges, the court found that Chorney and his agents had purposely delayed the bankruptcy process through shifting misrepresentations about corporate assets, unauthorized and transparently fraudulent business operations, and circumvention of the court's injunction against coin sales. In re Cumberland Inv. Corp., 118 B.R. at 4-7.
 
 
 7
 Shortly before the decision to appoint a trustee, the court had also held hearings over a five-day period on a CIC motion to strike one of the examiner's reports. In that motion, Chorney had alleged examiner bias, conflict of interest, slander, a conspiracy between the examiner and Eastland to misrepresent CIC's affairs, and inventory switches by Eastland. From the evidence presented there, the court questioned the debtor's good faith, concluding that Chorney's allegations were "totally unsupportable," "fabricated," and "out of touch with reality." In re Cumberland Inv. Corp., 116 B.R. at 354. The district court affirmed both orders, finding the bankruptcy judge's analysis "well supported" by the evidence. In re Cumberland Inv. Corp., 133 B.R. at 279, 280.
 
 
 8
 In the nine months following the trustee's appointment, the bankruptcy court docket sheet shows 234 entries. Among them are a variety of motions brought by the trustee, examiner, and Eastland seeking orders directing Chorney to cooperate or to refrain from interference with the bankruptcy process.
 
 
 9
 The proceedings immediately precipitating this appeal began on May 21, 1991, when Chorney moved to adjudge the examiner in contempt. The sole basis for this motion was an allegation that the examiner had failed to use his "best efforts" to obtain agreement among the parties on a method for sale of assets as required by an earlier court order. A hearing was held and testimony taken which showed the motion to be unfounded and wholly frivolous.
 
 
 10
 On July 3, 1991, in an order dismissing the examiner contempt motion, Judge Votolato observed that over the course of the bankruptcy proceedings Chorney had "deliberately and continuously acted in bad faith to obstruct and to hinder the efficient administration of the estate." He sua sponte ordered Chorney to show cause why he should not be adjudged in contempt for his "wilful interference with the orderly and economic administration of this estate and [his] unjustified waste of the time of this Court and of numerous parties."[2]
 
 
 11
 A hearing on the show cause order was held on September 17, 1991. Testimony at that hearing spans 80 transcript pages. Judge Votolato continued the matter without a finding in the hope that a change in Chorney's behavior or attitude might warrant further consideration. After a status conference on June 18, 1992 revealed no change,[3] the court issued the contempt order appealed here. In addition to the entire record as reflected in the docket entries, the court relied on the trustee's summary of recent events at the show cause hearing.
 
 
 12
 [T]he Trustee, John Cullen, Esq., described what was unfortunately an already too familiar pattern of obstructionist behavior by Mr. Chorney [footnote omitted]. For example: he continued, post-petition, to advertise fraudulently after both agreeing to and being ordered to desist; to cure a glaring security problem, the Trustee moved for and obtained a Court order to physically eject Chorney from the Debtor's business premises (where he was actually living,[*] after repeated broken promises to vacate; [* *] CIC records were allegedly concealed and/or destroyed; coin and other inventory values were grossly and fraudulently overstated to the Court, the Trustee, and to creditors; many frivolous pleadings were filed and extensively litigated, with the intent and effect of impeding the administration of an estate already left in shambles by Chorney; information concerning the identity of redemption coin holders was wrongfully withheld on the baseless ground of 'confidentiality,' even after disclosure was ordered by the Court, and so on.
 
 
 13
 The most damaging consequence of Chorney's incomprehensible behavior, however, is the incredible amount of needless expense that has been heaped upon the estate, and ultimately, of course, upon the creditors. The Trustee's and Examiner's duties (and their fees and expenses) have been increased; secured creditors, long-delayed in exercising their rights, have seen the interest part of their claims escalate; and the likelihood of a meaningful distribution to hundreds of unsecured creditors and redemption coin holders has been practically eliminated. All of this waste has been caused unnecessarily by Harold Chorney.
 
 
 14
 [*] Chorney's apartment was literally surrounded by inventory, allowing a real-life "fox-guarding-the-chicken-coup" scenario. His bed was literally within inches of the vault and its contents.
 
 
 15
 [* *] The Court order was ignored, however, and the Trustee ended up, instead, moving the assets to another location, at a cost to the estate of approximately $95,000.
 
 
 16
 In re Cumberland Inv. Corp., No. 89-11051, slip op. at 2-3 (Bankr. D.R.I. July 2, 1992).
 
 
 17
 On the basis of time records submitted by the trustee, the examiner and Eastland Bank, showing "expenses directly attributable to unnecessary litigation and/or extra judicial work generated by Mr. Chorney," the court ordered Chorney to pay $200,000 to the trustee as "partial reimbursement for the deliberate post-petition damage he has done to creditors." In re Cumberland Inv. Corp., No. 89-11051, slip op. at 4. The court said that its order was "purposefully crafted to be compensatory and not punitive in nature." Id. at 4.
 
 
 18
 Chorney's brief here denies the accuracy of the judge's factual conclusions and argues that he is the victim of retaliation for his criticisms of improprieties by the judge, trustee and examiner. In support of his denials and blame shifting, however, he points only to previous appellate briefs in this court and elsewhere which recite the same conclusions, and to selected excerpts from the record. We have read the briefs and the record references as liberally as possible in his favor, given his pro se status. However, the material he offers barely provides even a glancing basis for his factual denials and no concrete support for his accusations. The selectivity of his citations, incoherent or indistinct purpose for many record references, and his repeated blurring of temporally distinct events, only serves to confuse and obfuscate the issues.[4]
 
 
 19
 "We must uphold the factual findings of the bankruptcy court, as affirmed by the district court, unless they are clearly erroneous." In re Power Recovery Sys., Inc., 950 F.2d 798 (1st Cir. 1991). Based on a full review of the record before us, including transcripts of the hearings of May 7, 1991, May 22, 1991, September 17, 1991, June 18, 1992, and July 17, 1992, it clearly appears that the bankruptcy court had more than ample evidence to support the contempt order.
 
 
 20
 We also reject Chorney's procedural challenges to the hearing and order. While Chorney claims now that he was never notified of the order, nor given time to prepare a defense, the record shows that he received ample notice and specification of the issues in the court's Show Cause order of July 3, 1991. That order fully complied with Bankruptcy Rule 9020(b). Chorney had more than two months to prepare a defense, was present without objection at the September 17, 1991 hearing, represented by counsel, testified, and was well prepared on all the issues raised.
 
 
 21
 Equally meritless is Chorney's claim that he was unconstitutionally deprived of a right to a jury trial. Absent an express statute, there is no right to a jury trial in civil contempt proceedings. Shillitani v. United States, 384 U.S. 364 (1966); cf. United States v. Pina, 844 F.2d 1, 11-12 (1st Cir. 1988) (even in some classes of criminal contempt cases there is no right to a jury). And while it may not always be easy to distinguish between criminal and civil contempt, there is no difficulty where, as here, the ultimate object is to compensate the injured party. See generally, In re Power Recovery Sys., Inc., 950 F.2d at 802-03 (defining criminal and civil contempt sanctions); Charles A. Wright et. al., 11 Federal Practice and Procedure § 2960 at nn. 59-60 (1973 & supp. 1992) (same).
 
 
 22
 At least two of the other issues raised in Chorney's brief merely reiterate arguments he raised in earlier appeals, which were dismissed by this court as improperly taken from interlocutory orders.[5] Chorney's remaining arguments are frivolous.
 
 
 23
 For the reasons stated, the judgment of the district court is affirmed. Appellee's request for sanctions is denied without prejudice to renewal of the request in the future should events so warrant.
 
 
 
 [1]
 Chorney's notice of appeal refers to the district court's order of January 8, 1993 in the singular. There were two orders entered that day, one dismissing the appeal on the merits, the other dismissing a motion for reconsideration based on "new evidence." The issues designated show that only the first order is contested
 
 
 [2]
 The order also barred Chorney from further participation or intervention in judicial proceedings relating to the disposition of the estate, except on the same basis as a general creditor
 
 
 [3]
 At the status conference the judge learned that in the intervening months Chorney, through Wescap, filed a state court lawsuit reciting the same alleged coin switches by Eastland which the bankruptcy court had earlier determined to be a fabricated charge. The suit was removed to federal court and Eastland advised that it was preparing a motion to dismiss the suit on collateral estoppel grounds. Hearing of June 18, 1992, Tr. at 2-4. Further, liquidation of the estate had been forced to a halt due to a pending criminal investigation into Chorney's conduct. Tr. at 6-8
 During the same period Chorney also took four appeals to the district court from bankruptcy orders. All four were dismissed with prejudice on the merits. Cumberland Inv. Corp., Nos. 91-0594, 91-0595, 91-0596, 91-0604, slip op. (D. R. I., June 5, 1992). Chorney then attempted to further appeal three of the orders to this court, which dismissed them as improperly taken from interlocutory orders. Chorney v. Eastland Bank, Nos. 92-1780, 81, 82, slip. op. (1st Cir. Feb. 5, 1993).
 
 
 [4]
 We also reviewed the videotape quoted in Chorney's brief, and conditionally accepted by this court on Chorney's motion to supplement the record. We are unable to determine from the scanty information given whether the tape was in evidence below and might thus be a proper part of this record. In any event, the tape does not support Chorney's assignments of error
 
 
 [5]
 See supra note 3. Chorney reiterates that he was denied due process when Judge Votolato both recused himself from hearing an Eastland motion to hold Chorney in contempt and ruled that there was no right to a jury trial on the Eastland motion. The Eastland motion was transferred to another judge, and eventually withdrawn. If by reasserting this argument Chorney is suggesting that Judge Votolato should have recused himself from the instant contempt hearing, the argument fails for want of any facts creating a reasonable doubt as to the judge's impartiality. United States v. Lopez, 944 F.2d 33, 327 (1st Cir. 1991). Chorney also attempts to reargue the contentions underlying his interlocutory appeal from denial of his motion to hold the examiner in contempt