J. Joseph Nugent, *Atty. Gen., ex rel.* Janet Lingard *et al.* *vs.* Townes M. Harris *et al.*

OCTOBER 26, 1962.

Present: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Powers, J. This is a bill in equity brought in the name of the attorney general at the relation of Janet Lingard and William R. Goldberg, and with his express consent, seeking to remove and replace the respondents as trustees of a charitable corporation for an alleged unwarranted termination of a corporate function. The cause was heard by a superior court justice on bill, answer and proof and resulted in the entry of a final decree denying and dismissing the bill. It is before us on the complainant's appeal from said decree, but in fact it is an appeal by the relators and we shall hereafter refer to the appellants as the relators.

The record discloses that the parties are or were members of the board of trustees of Saint Dunstan's College of Sa-

cred Music, hereinafter referred to as St. Dunstan's College, a charitable corporation incorporated by the general assembly in 1930.

Its charter provided that "The design and object of the said corporation is hereby declared to be the advancement of learning, by instruction in the liberal arts and sciences, particularly in the history, theory and performance of music; by the promotion of research and investigation and of musical composition; by the maintenance of a library; by the collection, preparation, publication, and distribution of books, periodicals, pamphlets, manuscripts and other works; by the conduct, encouragement and support of musical festivals; by establishing and maintaining a school, to be known as St. Dunstan's Choir School, for the education of boys in such of the arts and sciences as the said corporation may in its discretion from time to time direct; and by such other methods as the corporation shall determine."

John Nicholas Brown, one of the respondents, testified in substance that in 1928 or 1929 he conceived the idea of strengthening and improving church music, particularly that of the Episcopal church, and to that end founded St. Dunstan's College for the purpose of training organists and choirmasters. He further testified that to provide a choir for their use St. Dunstan's School for boys was founded, and in fact commenced operations in the fall of 1929 prior to the incorporation of St. Dunstan's College.

It is also Mr. Brown's uncontradicted testimony that the college did not prove feasible, primarily because of economic conditions, and efforts to launch even a limited college were abandoned.

It appears from the record, however, that St. Dunstan's School for boys, established as an adjunct to the proposed college program, was maintained and operated by the corporation until the close of the academic year in 1962; that

in 1947 a building and development fund was established by the trustees which in 1951 amounted to $32,000; that in 1952 an alleged building fund drive raised $102,000; and that at the time the bill of complaint was filed some $148,000 was available for the purchase or construction of new quarters.

It is undisputed that in 1953 it became advisable to move the school from the rather old buildings located on Benefit street; that plans were made to acquire the Gammell House at 170 Hope street in Providence, but that property was purchased by Brown University which in turn leased it to St. Dunstan's College for a term of years. In 1960, however, Brown University gave notice of its intention to terminate the lease effective at the end of the 1961-1962 school year.

Because the school was operating at an annual deficit and no suitable quarters could be agreed upon, nor a new school constructed for lack of adequate funds, and because an average enrollment of no more than 75 per cent of capacity impaired the efficient operation of the school, together with the knowledge that the annual contribution of the Episcopal diocese was to be terminated, the board of trustees on March 4, 1961, by a reconsidered vote of 7-5, voted to close the school at the end of the academic year in June 1961.

Thereafter on March 9, 1961, at the behest of parents, alumni and faculty members, the trustees voted to rescind their action and to continue St. Dunstan's School at least until the end of the 1961-1962 school year on certain conditions. The conditions involved a survey by a professional group of the potentials of a fund-raising campaign to be conducted under the auspices of the parents' association. The purpose of the survey was to establish to the satisfaction of the trustees that such a drive would raise sufficient funds to discharge existing deficits and those to be

incurred in the immediate future, as well as to acquire a site for a new school together with construction costs.

The parents' association was advised by the trustees that such a survey, if to be considered satisfactory, should establish the immediate availability of $50,000 in special gifts. Pursuant to this action a professional organization was engaged. When, on June 19, 1961, a report of fund-raising activities appeared to a majority of the trustees as not meeting the minimum conditions, the professional group voluntarily canceled their contract and by a vote of 10-4 the trustees voted to close the school at the end of the 1961-1962 academic year.

Thereafter the relators filed the instant bill of complaint, calling upon respondents to resign or in the alternative praying that they be removed.

In a careful, exhaustive analysis and review of a voluminous record the trial justice found as a fact:

> "Number one, there are no acts or omissions of these trustees which I find to be fraudulent;
> "Number two, there are no acts or omissions of these trustees which I find to constitute mismanagement as that term is used in the law of trusts;
> "Number three, there are no acts or omissions of these trustees which are beyond the realm of honest judgment as that is used in indicating that a court of equity will not interfere; and
> "Number four, there is no lack of sympathy for the objects of the trust shown to me to be in these trustees to color their actions or attitude to a point where they should be the subject of removal."

The trial justice, referring to numerous authorities, held that a court of equity would intervene only upon a finding of fraud, mismanagement akin to fraud, diversion of assets from trust or corporate purposes or a marked lack of sympathy amounting to hostility toward the expressed purposes of the trust or charter. He further held that a court of equity will not intervene on a mere showing of poor

judgment not amounting to an affirmative ground for intervention.

Applying the facts as he found them to what he conceived to be the applicable law, the trial justice denied and dismissed the bill of complaint. The final decree appealed from conforms to his decision and the relators have assigned twenty-five reasons of appeal therefrom. Such reasons, however, for the most part relate to evidentiary rulings and since they have been neither briefed nor argued they are deemed to be waived. *Fine* v. *Hoffman,* 88 R. I. 1.

The remaining reasons of appeal assert that the decree is against the law, against the evidence and the weight thereof, and fails to do justice between the parties.

The issues as stated by the relators in their brief, and it is thus that we shall consider them, are:

> "Do a majority of the trustees of a charitable, eleemosynary, or educational corporation, after having publicly solicited funds for the promotion and development of a school, have the right to terminate the operation of that school and withhold $148,000.00 plus its physical assets from the students, faculty and staff who are eager and willing to continue the school?"

> "Can the court transfer the assets to another corporation organized for the same purposes and objectives governed by incorporators who are maintaining such a school?"

Since the instant bill was brought and prosecuted with the object of having respondents removed and replaced, the question contained within the second issue as framed by the relators was not before the trial justice at the hearing on the bill and is not properly before this court on appeal. See *Ferruolo* v. *Columbus Exchange Trust Co.,* 61 R. I. 77.

The relators' conception of the first issue as framed by them presupposes that the suit was prosecuted on the basis of a specific established trust of which St. Dunstan's College was trustee. Indeed they have both briefed and argued

their appeal as though such were the case, citing numerous authorities in support thereof. These cases are of no assistance to them, however. In each of them there was no question but that a specific charitable trust existed.

Here, however, respondents in their answer denied that the funds in question were impressed with a trust for the sole use of St. Dunstan's School. They alleged that such funds were in the hands of the corporation and available for use in carrying out any of the purposes set forth in the corporation charter, including but not limited to the construction of a school for St. Dunstan's.

In support of their position to the contrary, the relators rely on the provisions of sec. 6 of the charter, the pertinent language of which reads as follows:

"* * * Whenever the corporation shall have accepted any property or estate given, granted, bequeathed or devised to said corporation upon any special trust, or for any special use or purpose, such property or estate shall be held and appropriated by said corporation in accordance with the trust uses and limitations expressed with respect to such gifts, grants, bequests and devises."

Their reliance, however, rests upon an assumed adjudication that the funds or property in question constitute the corpus of an established trust. No such determination was ever made. Saint Dunstan's School was admittedly but one of several purposes set out in the charter of St. Dunstan's College and the instant suit was brought and prosecuted by a minority of the board of trustees of the college to remove and replace a majority of their fellow trustees because of a difference of opinion on internal affairs.

The trial justice correctly recognized the posture in which the cause was presented. He made findings of fact thereon and after careful examination we cannot say that he was clearly wrong. In such circumstances his findings are entitled to great weight and will not be disturbed by

this court on appeal. *McDonough* v. *McDonough*, 88 R. I. 243.

Nor considering the posture in which the cause was presented to him did the trial justice misconceive the applicable law. The relators' reasons of appeal are therefore without merit.

The appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*J. Joseph Nugent,* Attorney General, *William R. Goldberg, Ronald R. Gagnon,* for relators as complainants.

*Hinckley, Allen, Salisbury & Parsons, Matthew W. Goring, Noel M. Field, Jr., Peter C. Alegi,* for respondents.