POINT TRAP COMPANY, INC. *vs.* GILBERT A. MANCHESTER.

APRIL 17, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

JOSLIN, J. This is a bill in equity in which the complainant in substance seeks to have a sale to the respondent of certain personal property consisting of some fishing boats and a gasoline engine declared null and void and to have confirmed its title to that property. The cause was heard in the superior court on bill, answer and proof and on the respondent's cross bill by which he prays in substance to have his title confirmed to said property and to compel the return of the boats to him, they being in the complainant's possession. Thereafter a decree was entered confirming the complainant's title to the property, declaring the sale thereof to be void, permanently enjoining the respondent from claiming any right or interest therein or disturbing the complainant's use and enjoyment thereof, and ordering the respondent to deliver the engine to the complainant. From that decree the respondent has appealed to this court.

The reasons of appeal in substance are that the decision of the trial justice and the decree are against the law and the evidence, and that the trial justice erred in certain evidentiary rulings.

The material facts are not in serious dispute. It appears that respondent's brother Francis B. Manchester, hereinafter referred to as Francis, and George W. Wheeler and their respective spouses, own fifty-eight shares of the one hundred authorized and issued shares of complainant's stock, while the remaining forty-two shares are owned by respondent and his wife. At all times material hereto Francis has been president of the company, and prior to August 18, 1961 respondent was its treasurer and general manager, and together with Francis and Wheeler was a member of its board of directors.

During the summer of 1961 it became apparent that respondent would soon be discharged as complainant's general manager and treasurer, a dispute having developed between Francis and Wheeler on the one side and respondent on the other. Before this could be accomplished, however, purporting to act on behalf of complainant without the knowledge or approval of either its board of directors or stockholders, respondent sold the boats and engine to himself for $1,500. He took physical possession of the engine but not of the boats, which remained in storage where they had earlier been placed after being hauled out of the water at the conclusion of the fishing season.

In connection with the transfer respondent executed on behalf of complainant and delivered to himself a copy of a bill of sale of the property. He testified that he placed the original thereof in complainant's files, but there is no evidence that any agent of complainant ever saw it or was advised as to what respondent testified he did. The only other written evidence of the transaction disclosed by the record was an entry in complainant's checkbook. That book was in respondent's possession and control at the time of the purported sale and was not turned over to complainant until late September. It contains the notation: "Cash: 8/9 — G. A. Manchester 1500 00 — workboats."

On August 18, 1961 at a meeting of complainant's board of directors respondent's relationship with complainant as general manager and treasurer was severed by board action for reasons other than the sale referred to, notice of which the directors other than respondent did not then have and which in fact did not come to their attention until a much later date.

In January 1962 complainant, shortly after learning of the purported sale, took physical possession of the boats by removing them from the locations where they had been continuously both before and after the sale and thereafter commenced this proceeding.

By his first contention respondent raises the issue of the authority of the president of complainant corporation to institute this action on its behalf in the absence of authorization so to do in the bylaws or by vote of either the directors or stockholders. Since it does not appear from the reasons of appeal that this issue was raised in the superior court, it will not be reviewed by us. *Nugent ex rel. Lingard* v. *Harris*, 95 R. I. 137, 184 A.2d 783; *Di Iorio* v. *William H. Considine & Co.*, 53 R. I. 382.

The respondent next contends that complainant had an adequate remedy at law and therefore the superior court sitting in equity was without jurisdiction to entertain this bill. If that contention has merit, an issue we do not reach, respondent should have raised it by demurring to the bill. By answering the bill, filing a cross bill and proceeding to trial on the merits, respondent foreclosed himself from challenging the court's equitable jurisdiction at a later stage of the proceedings. *Rhode Island Dairy Queen, Inc.* v. *Burke*, 95 R. I. 339, 187 A.2d 521; *Setchell Auto Parts Inc.* v. *Artamian & Sutcliffe Inc.*, 50 R. I. 144.

We now come to the substantial question of whether this transaction where the complainant corporation was represented by the respondent officer who was also the opposing

party was valid in the absence of prior authorization or later ratification by the complainant corporation's board of directors or stockholders.

The validity of the transaction is controlled by G. L. 1956, §7-4-7, which is as follows:

> "Contracts with directors or companies with interlocking directorates.—Any corporation may contract for any lawful purpose with one or more of its directors or with any corporation having with it a common director or directors, if the contract is entered into in good faith, if it is approved or ratified by vote of the holders of a majority in interest of its stock or by a majority vote at any meeting of its board of directors excluding any vote by the contracting or common director or directors and if the contracting or common director or directors shall not be necessary for a quorum at the meeting for this purpose. A contract made in compliance with the foregoing provisions shall be voidable by the corporation complying with the said provisions only in case it would be voidable if made with a stranger. A contract not otherwise void or voidable shall not be rendered void or voidable merely because not approved or ratified in accordance with the foregoing provisions."

In *Matteson* v. *Wm. S. Sweet & Son, Inc.,* 58 R. I. 411, this court held that §7-4-7 fixes the only proper method whereby a corporation can contract with a director, and that a contract not made conformably therewith is invalid.

The respondent, however, contends that the last sentence of that section, which was added by P. L. 1956, chap. 3785, sec. 1, subsequent to our decision in *Matteson*, nullifies its application to the facts in this cause and that this sale should not be set aside notwithstanding that it was neither approved nor ratified by a vote of either the stockholders or the board of directors. He premises such contention on the grounds that the property sold was surplus to complainant's needs and the selling price was fair. His contention

if supported by the evidence has merit only if the bill of sale was "not otherwise void or voidable."

An officer of a corporation stands in a fiduciary relationship toward its stockholders and his position in relation to that group is analogous to that of trustee and cestui que trust. *Eaton* v. *Robinson,* 19 R. I. 146. Such a relationship is one of trust and confidence and imposes the duty on the fiduciary to act with the utmost good faith. That good faith requirement forbids action on the part of a fiduciary without the knowledge and consent of his cestui que trust when he has an individual interest in the subject matter or when his interest is in conflict with that of the person for whom he acts. *Kessler* v. *Bishop,* 51 R. I. 202.

Where a fiduciary relationship exists the law will not tolerate the possibility that a trustee may sell a portion of the property held in trust in his own interest rather than in the interest of his beneficiary, or that he may purchase property at a sacrifice to the trust with a resulting benefit to himself. See *Stephens* v. *Dubois,* 31 R. I. 138, 143. Moreover, where one standing in a fiduciary relationship deals with himself by purchasing from or selling to the trust, the transaction does not acquire validity because the price is fair, it being well settled that we will not consider whether in a particular instance a purchase or sale "is fair or otherwise." *Horton* v. *Maine,* 22 R. I. 126.

This rule applies also when an officer or director is a party to a transaction in which he has acted both for himself and for the corporation in which he holds office. In such circumstances we adhere to the prevailing view that the transaction may be set aside by the corporation because of the mere relationship of the parties, and "without regard to whether the corporation has been injured, or the contract is fair or unfair, or the officer has acted in good faith or in bad faith * * *." 3 Fletcher, Private Corporations §926, p. 362 (perm. ed. rev. repl. 1947).

In our opinion, therefore, the purported sale should be set aside unless complainant is estopped, as contended by respondent, from contesting it because of the retention of the $1,500 paid contemporaneously with the sale or because complainant's failure to return the purchase price constituted a ratification of the purported sale through acquiescence.

We disagree with that contention. The complainant being entitled to set aside the purported sale cannot be charged with having acquiesced in or confirmed that transaction unless it had full knowledge of all the facts, *Stephens* v. *Dubois, supra,* at p. 148, and the evidence here does not either disclose such knowledge prior to the sale, or that once having acquired it at a substantially later date complainant delayed unduly thereafter in commencing this suit.

That it did not acquiesce does not mean, however, that it may disavow the sale and retain the $1,500 paid by respondent for the personal property, because if complainant is to be permitted to cancel and set aside the bill of sale justice requires that respondent be put in *statu quo* and have restored to him that which he had paid. See *Johnston* v. *Johnston,* 74 R. I. 306, and *Grant* v. *Bell,* 26 R. I. 288. Because of the pendency of other litigation between these parties involving allegedly improper withdrawals of corporate funds by respondent, the trial justice did not order the repayment of that sum, but left it "for further determination at a later time" in connection with such other litigation. Since that other litigation was not properly before the court and the merits of complainant's contentions as to the propriety of respondent's withdrawals could not be passed upon, it was error for the trial justice not to apply the rule requiring a restoration of the *status quo.*

We finally come to the reasons of appeal which go to rulings on evidentiary matters. Those that have not been either briefed or argued are deemed to have been waived.

The others have been carefully examined by us and we find that they are either without merit or, in the view we have taken of this case, without prejudice to the respondent.

The respondent's appeal is denied in part and sustained in part, and the cause is remanded to the superior court with direction to modify the decree appealed from in accordance with this opinion.

*Hinckley, Allen, Salisbury & Parsons, John R. Allen*, for complainant.