[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court on counterclaim plaintiffs', trial court defendants Armenio and Antonio Teixeira, complaint alleging stockholder oppression by the counterclaim defendants, Honorato Custodio, Joaquim Duarte and Manuel Moitoso, in their capacity as majority stockholders of A. Teixeira and Co., Inc., the original plaintiffs in the above entitled matter. In their complaint, the counterclaim plaintiffs, as the minority shareholders of A. Teixeira and Co., Inc., maintain that the counterclaim defendants, in deliberate actions as majority stockholders, acted improperly and illegally thereby oppressing the minority shareholders of said corporation. Jurisdiction is pursuant to R.I.G.L. 1956 (1992 Reenactment) § 7-1.1-90 and § 7-1.1-90.1.
FACTS/TRAVEL
The above entitled matter is before the Court after a jury verdict against the defendants (counterclaim plaintiffs) finding them liable for misappropriation of a corporate opportunity and awarding punitive damages together with the transfer of corporate stock in the competing liquor store that was the subject of the original lawsuit. From the record and memoranda submitted, those facts pertinent to this counterclaim are as follows.
Incorporated in Rhode Island on September 15, 1981, A. Teixeira Co., Inc. is involved in the maintenance and operation of a retail liquor store in Cumberland, Rhode Island. The corporation is owned by six (6) different shareholders; among them are the defendants/counterclaim plaintiffs, Armenio and Antonio Teixeira. The other four (4) stockholders are Honorato Custodio, Joaquim Duarte, Manuel Moitoso and Arthur Moto. Each of the six shareholders was awarded 100 shares of stock (out of a total of 600 shares available) upon A. Teixeira Co.'s incorporation in 1981. Arthur Moto transferred his shares to Joaquim Duarte in 1983.
A. Teixeira Co., Inc., originating out of a friendly business venture, operated informally and with at least some participation from all of the shareholders in corporate management and decision-making from the date of incorporation until an incident, referred to as a "falling out," occurred in September, 1983. Tr., pp. 15-16, 22 (March 26 and 27, 1993). That incident, not only evidences a preexisting internal disagreement but also, and more importantly, demarcates the temporal point at which the relationship among the corporate members and the nature of their decision-making changed. Id.
at 23-24. Following this incident, the majority shareholders, in the persons of Duarte, Custodio and Moitoso, unsuccessfully attempted to buy out the shares of Armenio and Antonio Teixeira.Id. at p. 12. As a result, on September 21, 1983 the completion of the corporate structure changed and A. Teixeira Co., Inc. began to conduct business in a polarized and more formal manner.Id. at pp. 22-24.
At the September 21, 1983 meeting, Honorato Custodio submitted his resignation as the holder of the four officer positions and new officers were elected by the shareholders. Custodio was then voted to the office of President and Treasurer; Joaquim Duarte to Vice President and Manuel Moitoso to Secretary.Transcript at p. 6 (June 29, 1993). The corporation also voted to set compensation at twenty-five thousand dollars ($25,000.00) annually for employees and five percent (5%) of gross sales for officers. Id. All of the above proposals passed in a vote of 400 shares, representing those shares of the majority stockholders and counterclaim defendants, to 200 shares, representing those shares owned by the minority shareholders and counterclaim plaintiffs, Armenio and Antonio Teixeira. At the same meeting a vote was taken on a proposal to set aside twenty-five thousand dollars ($25,000) from the corporations's profits for capital expenditure and equipment. The measure passed 500 shares to 100 shares indicating that one of the Teixeiras voted in favor of the proposal. No alternatives or other proposals were offered during the meeting regarding the issues of management, compensation, and expenditures.
There is no documentation in the corporate books nor was there any presented at trial to show that annual stockholders' meetings took place in 1984 and 1985. There is testimony, however, that during those two years, the majority shareholders serving as officers, without Armenio and Antonio Teixeira present, decided the amount of compensation officers would receive. Counterclaim Plaintiffs' Memo at p. 11; quoting Tr.
at pp. 124-125 (March 26 and 27, 1993). At the annual stockholders' meeting in 1986, all five stockholders were present and the Teixeiras were represented by counsel.
The minutes indicate that Honorato Custudio and Joaquim Duarte resigned their respective positions of President and Vice President. Manuel Moitoso was proposed as President and Custodio as Vice President. All of the above proposals, without any alternatives being offered, received the same vote, 400 to 200 shares, with only the Teixeiras voting in opposition. Id. at p. 10 (June 29, 1993). The same vote was recorded on tendered proposals to set the officers' salaries at thirty-six thousand dollars ($36,000) and to reinvest any profits derived in the years starting in 1987 up to and including 1992 for the purpose of increasing the size, strength and net worth of the corporation. Id. at p. 12. No alternatives were proposed.
On March 17, 1987 all of the stockholders met for the annual meeting. Counterclaim plaintiffs were present with legal counsel. The same 400 shares to 200 shares vote was tallied for the reelection of officers. The shareholders also voted to authorize expending seventy-five thousand dollars ($75,000) for the renovation and expansion of the store with 500 shares in favor and 100 shares abstaining: one Teixeira favored the proposal; one abstained. Id. at pp. 14-15.
At the annual stockholders' meeting on February 23, 1988 all stockholders were present except for Armenio Teixeira but he, like Antonio Teixeira, had legal counsel in attendance. The officers of the corporation were reelected unanimously. The stockholders also unanimously approved of a proposal to raise twenty-five thousand dollars ($25,000) by issuing 200 additional shares of stock to be offered to current stockholders based on their present percentage of holding. Id. at p. 17. While three stockholders exercised the stock purchase option, the Teixeiras declined similar opportunity. Id. at p. 18. Following a report that sales had increased by twenty-five percent (25%), a proposal passed 400 shares to 100 shares, the latter controlled by Antonio Teixeira, to increase the officer's compensation from thirty-six thousand dollars ($36,000) to forty-one thousand seven hundred and sixty dollars. No alternative proposals were offered or discussed. Id. at p. 19.
The 1989 stockholders' meeting, attended by all five shareholders, resulted in the unanimous reelection of the officers. Motions to purchase a delivery system and security system passed 400 shares in favor, 200 shares (Teixeiras) against. A proposal to update the inventory control system passed 500 shares to 100 shares, again evidencing a favorable vote by one of the Teixeiras. A discussion then ensued focusing on the costs and benefits of the Liquor Liability Insurance subscribed to at that time by the corporation, particularly as to the protection that insurance affords to the corporation in regards to the then threatened litigation. On the advice of corporate counsel and after much discussion the corporation voted 500 shares to 100 shares, again evidencing the favor of one of the counterclaim plaintiffs, to drop the insurance or at least modify it to a lesser cost. That vote reflected stockholder agreement that the insurance generally afforded little security because of the insurance company's limited assets and more specifically because that insurance would not cover the 1988 liability claim.
The annual stockholders' meeting in 1990 was attended by Custodio, Duarte, Moitoso and counsel for the Teixeiras by proxy. At this gathering, the officers were unanimously reelected and unanimously granted a raise in salary to forty-seven thousand sixty-two dollars ($47,062). Id. at p. 24. Also, after review of the financial report by each stockholder, it was unanimously voted that a fifty dollar ($50.00) per share dividend was to be paid to each stockholder. Following further discussion on the issue of Liquor Liability Insurance, the corporation, by a margin of 500 shares in favor and 100 shares against, voted to drop the insurance coverage. It is significant to note that in later discussion, counsel explained the pending lawsuit and the element of negotiating a settlement and that a decision to negotiate towards settlement passed without objection. Transcript at p. 30 (June 29, 1993).
In 1991, Antonio Teixeira, precluded from participating in the corporation following a conviction of a crime unrelated to corporate activity and affairs, was removed as a shareholder.
In 1992, in the absence of the counterclaim plaintiffs, it was unanimously voted that the officers' salaries be increased by six percent (6%). It was also unanimously decided to declare a dividend of fifty dollars ($50.00) per share to all stockholders.
MINORITY SHAREHOLDER OPPRESSION
In the matter at bar, the counterclaim plaintiffs submit that the majority have intentionally and systematically engaged in oppressive conduct over the years, thereby breaching the duty of good faith owed to them as minority shareholders.
Counterclaim Plaintiffs' Memo at p. 5. Relief is sought subject to those provisions set forth in R.I.G.L. § 7-1.1-90 and § 7-1.1-90.1.
Section 7-1.1-90.1 provides, in pertinent part:
 Jurisdiction of Court to liquidate assets in business of corporation. — (a) the superior court shall have full power to liquidate the assets and business of a corporation:
 (1) In an action by a shareholder when it is established that, whether or not the corporate business has been or could be operated at a profit, dissolution would be beneficial to the shareholders because
 (B) The acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent . . ."
Section 7-1.1-90 provides, in pertinent part:
 Avoidance of dissolution by stock buyout — Whenever a petition for dissolution of a corporation is filed by one or more shareholders (hereinafter in this section referred to as the "petitioner") pursuant to either § 7-1.1-90 or a right to compel dissolution which is authorized under § 7-1.1-51 or is otherwise valid, one or more of its other shareholders may avoid the dissolution by filing with the court prior to the commencement of the hearing, or, in the discretion of the court, at any time thereafter prior to a sale or those disposition of the assets of the corporation, an election to purchase the shares owned by the petitioner at a price equal to their fair value . . ."
It is the counterclaim plaintiffs' contention that the acts of the counterclaim defendants are illegal, oppressive and fraudulent and as such not only qualify but require the Court, through the application for the above statutes, to liquidate the assets of A. Teixeira and Co., Inc., or, in the alternative, mandate the buy out of the minority shareholders' stock. Alternatively, the counterclaim defendants submit that the majority stockholders exercised good faith business judgment in the best interest of the corporation and all of its stockholders.
Holders of a majority of the voting shares in a corporation, through their ability to elect and control a majority of the directors as well as dictate the outcome of shareholders' votes on other matters, have tremendous power to benefit themselves at the expense of minority shareholders. Oppression of MinorityShareholders: Protesting Minority Rights by F. Hodge O'Neal 35 Cleveland State Law Review 121 (1987). Inherent in this power is the responsibility of the majority to all shareholders, particularly those in the minority, to conduct corporate affairs with utmost good faith and loyalty in fulfillment of the fiduciary duty owed to all members in the operation for the corporation. Id. at p. 128; See also, Point Trap Co., Inc. v.Manchester, 199 A.2d 592, 595 (R.I. 1964). This strict good faith standard was implemented, especially in close corporations, in order to strike a balance between the majority's fiduciary obligations and majority rights to conduct corporate affairs as they see fit.
To protect the reasonable expectations of minority shareholders against an unfair exercise of majority shareholder or managerial power, states have enacted legislation which gives affirmative protection to minority shareholders. In this jurisdiction two of those devices, available to the minority shareholders and prayed for by the counterclaim plaintiffs in the instant matter, are § 7-1.1-90, through which the Court has jurisdiction to liquidate the assets and business of a corporation, and § 7-1.1-90.1, which provides for the avoidance of dissolution by stock buy out.
It is generally recognized that "involuntary dissolution of a solvent corporation is a drastic measure which should be employed cautiously and only in extreme circumstances." Gee v. Blue StoneHeights Hunting Cl., 604 A.2d 1141, 1144 (Pa. Cmwlth. 1992);See also e.g., Abel v. Forrest Realty, 484 So.2d 1069, 1072 (Ala. 1986) and Gimpel v. Bolstein, 477 N.Y.S.2d 1014, 1017 (Sup. 1984); Hockenberger v. Curry, 215 N.W.2d 627, 628 (Neb. 1974). One statutory ground for dissolution of a corporation is oppression, and it is this ground which forms the basis of the claim in the instant matter. Oppression is generally recognized as burdensome, harsh, and wrongful conduct amounting to a visible departure from the standards of fair dealing and fair play and constituting a breach of the fiduciary duty of good faith and fair dealing owed by the majority shareholders to the minority.Corporations 19 Am.Jur.2d 568, § 2766. In response to allegations of such oppression, the remedy of liquidation is invoked with extreme caution because too broad an application of that statute would offend the ends of justice by merely eliminating the one evil, minority oppression, by substituting a greater one — oppression of the majority by the minority.Hockenberger at 628 quoting Polikoff v. Dole Clark Bldg.Corp., 184 N.E.2d 792 (1962).
Both parties in this counterclaim refer to and rely on the analysis set forth in the seminal case of Donahue v. RoadElectrotype, 328 N.E.2d 505 (1975). While certainly not controlling in this jurisdiction, Donahue is instructive on the law not solely in Massachusetts but generally in the law as well as it espouses the majority view of fiduciary duty in close corporations. As counsel has presented no Rhode Island case on point, this Court will review the instant matter based on that analysis. In Donahue, a finding of oppressive conduct required evidence of situations where majority shareholders, in discharging management and stockholder responsibilities, failed to observe the strict good faith standard required in close corporations. Id. at 514-515. The Donahue decision is significant not only for its discussion regarding the application of the appropriate standard to observe but for listing and analyzing three indicia capable of evidencing that conduct. The three indicia referenced to demonstrate minority oppression by the majority are the refusal to declare dividends, the draining off of profits and assets through excessive salaries and bonuses and lastly, depriving the minority of the ability to hold corporate office or employment in the company. CounterclaimPlaintiffs' Memo at p. 4 and Counterclaim Defendants' Memo at p. 8.
The counterclaim plaintiffs argue that the majority shareholders, counterclaim defendants, refused to declare dividends and thereby failed to act in accordance with corporate resolutions regarding money set aside specifically for distribution and as a result clearly breached their fiduciary duty to the corporation and to the minority shareholders.Counterclaim Plaintiffs' Memo at p. 18. The counterclaim defendants' actions, the Teixeiras suggest, violated the reasonable expectations of the minority to share in the profits of the corporation and caused the minority shareholders to be oppressed. Id. A plausible inference, the counterclaim plaintiffs conclude, is that the majority shareholders did not want to distribute profits to the minority and, although the corporate profits increased each year, the majority precluded the minority shareholders from sharing in those profits while the majority enjoyed their share. Id.
The facts and the trial record do not support Antonio and Armenio Teixeira's arguments regarding the declaration of dividends, nor do same provide any basis for the above inference. In fact there is substantial evidence and credible testimony that shows that dividends were not declared based on sound business judgment in fulfillment of the fiduciary duty owed to the corporation. Additionally, the corporate minutes of those years at issue in the instant matter, briefly listed in the facts cited infra., record votes on the use and dedication of the profits to enhance the operation of the corporation rather than to declare those profits as a dividend. The Teixeiras took part in many of those votes, offering no alternative proposals at any point and, in many instances, voted in support of dedicating the profits to purposes other than declaring a dividend. In other years, notably in 1990 and 1992, dividends were declared.
The counterclaim plaintiffs' argument that the majority shareholders, in the persons of the counterclaim defendants, drained off profits and assets through exorbitant salaries and bonuses is similarly without basis. The salary structure set up upon the incorporation of A. Teixeira Co., and ultimately reviewed in an audit by the I.R.S., offers no proof of either unreasonable, exorbitant salaries or excessive bonuses as the counterclaim plaintiffs would suggest. The salaries awarded were discussed, proposed, and voted upon without any alternative discussion or proposals being submitted at the annual meetings and oftentimes were consented to by the Teixeiras. The incremental increases reflect both the active participation of the benefited shareholders including the Teixeiras, and the overall success of the corporation. Both are conservative in amount and, based on the extensive record, justified in their award.
The record is also devoid of evidence from which the Court can conclude that the majority stockholders deprived the minority of the ability to hold corporate office or employment in the company. The record indicates that both of the Teixeiras, despite an invitation for more active participation and contribution, were involved in other businesses and uninterested in working for the company. The facts also reflect that without offering other candidates for election, posts they were able to fill, the counterclaim plaintiffs voted, most often in favor of those members seeking election as corporate officers.
Further, in a related issue, the counterclaim plaintiffs argue that the controlling shareholders in their capacity as officers breached a fiduciary duty to the minority by failing to maintain adequate liability insurance thereby failing in turn to protect the shareholders' investment and the assets of the corporation. Counterclaim Plaintiffs' Memo at p. 24. Once again the facts and record clearly establish that the counterclaim plaintiffs were active shareholders during the discussion regarding liability insurance and, without offering any alternative proposal, participated and voted in the matter. The decision to enroll in an insurance plan and ultimately to let that plan lapse was made within the sound discretion of directors, including the involvement of all shareholders. Short of a plain abuse of discretion, the Court will not interfere with that management.
This Court finds that the record does not support the counterclaim plaintiff's argument in their claim of minority oppression. Armenio and Antonio Teixeira's allegations of impropriety and oppression simply do not, individually or collectively, constitute oppressive conduct such as would justify dissolution. Dissolution, under § 7-1.1-90, is too drastic a remedy in this instance and its application would be inappropriate. As a result, the counterclaim plaintiffs' petition for dissolution is denied.
Having determined that dissolution is not appropriate, this Court does not lack jurisdiction to fashion a remedy in the instant matter. While § 7-1.1-90 and § 7-1.1-90.1 make explicit mention of only one remedy, that being liquidation, the Court is also charged and given the discretion to determine the best means available to satisfy and to protect the rights and interests of not only the petitioning shareholders but all interested stockholders. Rhode Island in § 7-1.1-90.1, like most states, has recognized, short of dissolution, a panoply of alternative remedies to which a court may turn where relief is warranted.See Baker v. Commercial Body Builders, 507 P.2d 387 (1973);Gimpel v. Bolstein, 477 N.Y.S.2d 1014 (Sup. 1984).
In this case involving A. Teixeira and Co., Inc. relief is warranted, justified, and needed. A once friendly business venture which developed into a successful and profitable corporation has been damaged by corporate infighting and stagnated by dissension. There is no prospect for harmony between the factions and any attempt to control injunctively the acts of the majority would present problems of enforcement that would overburden the Court. A. Teixeira Co., Inc. is a close corporation and as such is little more than an incorporated partnership which, according to 2F. O'Neal, Close Corporation § 9.02, requires "close cooperation and a high degree of good faith and mutual respect." Those elements, if they ever existed, have long since dissolved.
Accordingly, an order will be entered requiring A. Teixeira 
Co., Inc., or the majority of its stockholders, specifically Honorato Custodio, Joaquim Duarte and Manuel Moitoso, to purchase the stock of the minority stockholders; namely, the counterclaim plaintiffs Armenio and Antonio Teixeira, at a price equal to their fair value. That price is to be determined by the parties in agreement based on the value of those shares at the time the original action was filed and in accordance with § 7-1.1-90.1. Judgment should enter for A. Teixeira Co., Inc. and against Armenio and Antonio Teixeira for expenses incurred in this suit and for any expense incurred in calculating the fair value of the stock.
Counsel shall submit an order for entry within two weeks.