[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This action is before the Court sitting without a jury and a decision is here rendered in accordance with R.C.P. 52. The case was heard before this Court on September 27-28, 1993 and on February 14-18, 1994. The plaintiff seeks dissolution and an accounting of defendant corporation pursuant to G.L. 1956 (1992 Reenactment) § 7-1.1-90.
FACTS/TRAVEL
Defendant, Providence Auto Body ("PAB"), is a duly organized corporation existing under the laws of the State of Rhode Island. The defendant, John H. Petrarca ("Petrarca"), owns and operates PAB. The plaintiff, Thomas R. DiLuglio ("DiLuglio"), contends that he owns two hundred (200) shares of PAB stock and brings this action in his capacity as a minority shareholder.
PAB Corporate History
A full understanding of the posture of this case requires an examination of PAB's history. In 1982, John Petrarca was seeking property upon which to locate an auto body business. Petrarca located property at 350 Silver Spring Street in Providence. The property was owned by Waldlum Realty, Inc. ("Waldlum"). Since Petrarca lacked sufficient financial resources to close the purchase, DiLuglio provided Petrarca with a check for $25,000. (Exhibit 1). At issue between the parties is whether this $25,000 check constituted a loan or an investment in the business.
Petrarca purchased the Waldlum stock, and the closing was held on October 27, 1982. At the time of the closing, the sole asset held by Waldlum was the property located at 350 Silver Spring Street.[1]
On December 2, 1982, PAB was incorporated to buy, sell, lease, and repair motor vehicles. John Petrarca appears as the sole director on the Articles of Incorporation. (Exhibit W). PAB also operates under the fictitious names North American Auto Leasing, Ltd. and North American Auto Sales, Ltd. (Exhibit C). The parties do not dispute that between 1982-86 Waldlum owned one hundred percent of the stock of PAB.
During 1983-84, DiLuglio made several loans to both Waldlum and PAB. (Exhibits 6, 7, 8). Such loans were made without documentation and bore no interest. In January 1985, DiLuglio began receiving $200 a week and later $250 a week from PAB. The parties dispute whether the payments were for rendered services or distributions of profits.
In 1986, due to changes in the Internal Revenue Code, PAB filed a Subchapter S election to become a Subchapter S corporation. (Exhibit 9). The election listed Petrarca and DiLuglio as eighty percent and twenty percent shareholders, respectively. The election documentation is signed by Petrarca in his capacity as a director of PAB. Additionally, in January 1987, stock certificates were issued to both DiLuglio and Petrarca.[2] Following the S-corporation election, Waldlum became a partnership with its sole asset being the property located at 350 Silver Spring Street.
Travel of the Case
The plaintiff brought the present action on February 7, 1989 in his asserted capacity as a minority shareholder of PAB. The complaint was amended in April 1989 to include a violation of § 7-1.1-46 for failure to allow the plaintiff to inspect corporate records. The plaintiff asserts that he is the holder of 200 shares of stock in PAB. Further, the plaintiff contends that Petrarca has operated the corporation for his own profit and to the exclusion of the plaintiff, has illegally and improperly diverted corporate assets, and has violated his duties to the plaintiff and the corporation. The plaintiff asks this Court to order an accounting of the corporate profits from 1982 through the filing of the complaint and to appoint a receiver to manage PAB until its dissolution.
Petrarca contends that DiLuglio's ownership in PAB is void because he was acting as Petrarca's attorney when he entered into the business relationship. In particular, Petrarca argues that DiLuglio did not properly advise him to seek independent counsel. Finally, Petrarca asserts a counterclaim against DiLuglio for $50,000 for automobiles received and services performed but for which PAB received no reimbursement.
There are several issues before the Court. Initially, this Court must determine whether and to what extent DiLuglio was a shareholder in PAB. If this Court determines that DiLuglio was a shareholder, it must then determine if such ownership is void based on a violation of the fiduciary duty owed by an attorney to his or her client. Further, this Court must review the merits of plaintiff's claim and, if it is meritorious, provide an appropriate remedy. Finally, the Court will review Petrarca's counterclaim. This Court will review these issues in seriatim.
DiLuglio's Shareholder Status
Under G.L. 1956 (1992 Reenactment) § 7-1.1-90, a shareholder of a corporation may seek relief from various acts of those in control of the corporation. Section 7-1.1-90 provides, in pertinent part:
 (a) The superior court shall have full power to liquidate the assets and business of a corporation:
 (1) In an action by a shareholder when it is established that, whether or not the corporate business has been or could be operated at a profit, dissolution would be beneficial to the shareholders because:
 (B) The acts of the director or those in control of the corporation are illegal, oppressive, or fraudulent; or
 (D) The corporate assets are being misapplied or are in danger of being wasted or lost.
Initially, Petrarca argues that DiLuglio is not a shareholder and that DiLuglio's initial check of $25,000 was a loan and not an investment in the corporation. This Court finds Petrarca's argument to be without merit.
It is clear under Rhode Island law that a stock certificate is but mere evidence of stock ownership and is not essential to ownership. Katz v. Prete, 459 A.2d 81, 84 (R.I. 1983). The fact that DiLuglio did not receive a stock certificate at the original incorporation of Waldlum is not dispositive. Stock ownership may be inferred from the conduct of the parties. Id.
In this case there is competent evidence from which to infer ownership. For example, this Court notes the lack of documentation and specified interest rate typical of a loan arrangement. Further, the Court notes that DiLuglio continued to use personal monies for the corporation when it was needed. Particularly noteworthy, is his payment of the November 1982 mortgage payment for Waldlum. (Exhibit 5). Finally, DiLuglio was listed as a shareholder on tax returns for several years. These actions are indicative of a person's interest as a shareholder of a corporation. This Court finds that it is clear by a fair preponderance of evidence that DiLuglio is in fact a shareholder in Waldlum which, in turn, owned one hundred percent of the stock in PAB.
Attorney/Client Relationship
Next, the defendant argues that DiLuglio was his attorney at the time they entered into the business venture and therefore DiLuglio's interest in the business is void. It is well settled that an attorney risks an ethical violation for knowingly acquiring a pecuniary interest adverse to a client without instituting certain safeguards, particularly, advising the client to seek the advice of independent counsel. Lisi v. Pearlman,
May 10, 1994, No. 94-258-M.P. While it is less clear that such a transgression will void the attorney's interest in such a transaction, this Court need not decide that issue in this case. It is clear from the testimony before this Court and from the record that DiLuglio was not acting in his capacity as an attorney for this business transaction.
As evidence of an attorney/client relationship, Petrarca testified that he considered DiLuglio to be his attorney from 1969-1988. In particular, he testified that he considered DiLuglio to be his attorney for the purpose of incorporating his auto body repair business. Petrarca noted that DiLuglio prepared and filed all the incorporating documents and that Petrarca unquestioningly followed DiLuglio's advice concerning incorporation.
Alternatively, DiLuglio testified that he had known Petrarca since 1969 or 1970 when Petrarca was referred to him on a legal matter. The parties thereafter maintained a friendly relationship. DiLuglio testified that he represented the Petrarcas in 1987 in a dispute arising from work being done on their home but had not represented Petrarca regularly. Further, DiLuglio testified that he knew that Petrarca was looking for a place to locate an auto body repair shop in 1982. He noted that when he found out that Petrarca was undercapitalized he offered $25,000 in exchange for an ownership interest in the business.
The existence of an attorney/client relationship is a question of fact and arises by the agreement of the parties.State v. Austin, 462 A.2d 359, 362 (R.I. 1983). Such agreement may be implied by the conduct of the parties. Id. While the subjective belief of the client is a factor in examining the existence of an attorney/client relationship, subjective belief, by itself is insufficient. See In re Cumberland InvestmentCorp., 120 B.R. 627, 628 (Bkrtcy D.R. 1990). The belief must be credible and at least minimally reasonable. Id.
After hearing the testimony and reviewing the evidence before the Court, this Court finds Petrarca's asserted belief is neither credible nor reasonable. The record reveals that Petrarca has been represented by several attorneys during his relationship with DiLuglio. Petrarca is an experienced businessman who is familiar with the use of attorneys and not unfamiliar with different types of business maneuverings. Nevertheless, the defendant was never billed by DiLuglio for legal representation arising out of PAB's incorporation and in fact was represented by independent counsel at the Waldlum closing. This Court finds that the defendant has failed to establish that an attorney/client relationship existed between himself and Mr. DiLuglio for the purpose of this business transaction. Additionally, the defendant has failed to prove that he reasonably believed that an attorney/client relationship existed.
Merits of the Claim
Turning to the merits of his claim, the plaintiff contends that Petrarca has distributed the assets of the corporation for his own profit and has illegally and improperly diverted corporate assets to himself. In particular, the plaintiff notes that Petrarca has paid excessive salaries to selected employees, has paid fringe benefits to himself and his wife in the form of insurance policies, bonuses, and pension plans, and has instituted a profit sharing plan for salaried employees without plaintiff's knowledge. Plaintiff further asserts that his remedy at law is inadequate as the exact amount of assets misappropriated can be determined only after a complete examination of the corporate records. In contrast, defendant argues that the $200 per month paid to DiLuglio was a distribution of profits.
An officer of a corporation stands in a fiduciary relationship towards its stockholders. Point Trap Co. v.Manchester, 98 R.I. 49, 54, 199 A.2d 592, 595 (1964). Generally, corporate decision making rests within the sound discretion of the directors and will not be disturbed by the Court. SeeElderidge v. Tymshare, Inc., 186 Cal.App.3d 767, 230 Cal.Rptr. 815, 820 (Cal.App. 6 Dist. 1986). This does not, though, provide the corporate insiders with a license to squeeze out minority shareholders and misappropriate corporate assets. Section 7-1.1-90 protects the reasonable expectations of minority shareholders. Corporate insiders are under a duty to perform their decision making in good faith. Point Trap Co., supra, 98 R.I. at 54, 199 A.2d at 595.
It is not clear from the record that the defendant has misappropriated or wasted assets, nor is it clear that defendant's acts are illegal or fraudulent. The particular instances of conduct referred to by the plaintiff are within the discretion of the defendant in his capacity as a director. Such decisions will not be disturbed by this Court. See Eldridge,
230 Cal.Rptr. at 820.
This Court's finding that the defendant's conduct was not illegal and fraudulent does not leave the plaintiff without a remedy. It is clear from the testimony before the Court and the evidence in the record that the shareholders are divided and that such dissension may result in serious harm to the corporation. The parties have obviously come to an impasse in their business relationship, and have resorted to protracted litigation. Such acrimony will eventually cause harm to the business. Under § 7-1.1-90 (a)(1)(E), this Court is empowered to liquidate the corporation upon such a showing. It is incumbent upon this Court to structure an appropriate remedy.
It is generally recognized that the "involuntary dissolution of a solvent corporation is a drastic measure which should be employed cautiously and only in extreme circumstances." Gee v.Stone Heights Hunting Club, 604 A.2d 1141, 1144 (Pa. 1992). Recognizing this need for caution, this Court hesitates to order the dissolution of an ongoing business such as PAB. Further, this Court is not bound by the request to liquidate but has before it a panoply of equitable devices by which to fashion a remedy. Accordingly, this Court orders the majority shareholder, John Petrarca, to purchase the stock of the minority shareholder, Thomas DiLuglio, at a price equal to its fair value at the time this action was filed. See G.L. 1956 (1992 Reenactment) § 7-1.1-90.1.
To aid the parties in the determination of the fair value of the PAB stock, this Court shall appoint a master. The appointment of a master is governed by R.C.P. 53. In cases such as this, where the parties have not mutually agreed to have their case referred to a master, the referral of a matter to a master is the exception rather than the rule. R.C.P. 53. To appoint a master in a nonjury case, this Court must make a showing that some exceptional condition requires the appointment. R.C.P. 53(b)(2).
This case has been contentious. The parties could not agree on appropriate terms for a buy-out before trial. The issue of the valuation of stock which has never been publicly traded is a complex exercise which calls for expertise beyond that of the Court. These conditions certainly rise to the level of the exceptional conditions contemplated by Rule 53. Accordingly, this Court will appoint a master to examine PAB and determine the fair value of DiLuglio's stock as of February 7, 1989.
Finally, this Court turns to Petrarca's counterclaim for payment for motor vehicles and services the plaintiff received in the amount of $50,000. The defendant has failed to prove by a fair preponderance of the evidence that these motor vehicles and services were rendered with expectation of payment. In contrast, the evidence suggests that payment was neither expected nor requested. Additionally, it is unclear which services were used in conjunction with the plaintiff's performance of services for PAB. Accordingly, defendant's counterclaim must fail.
For the reasons herein above set out, this Court finds that plaintiff is the holder of 200 shares of stock in Waldlum which, in turn, owns PAB. Further, this Court finds that no attorney/client relationship existed between the parties as is relevant to the subject business transaction. Finally, this Court finds that the dissension between the parties may result in harm to the corporation and a buy-out of the plaintiff's stock by the defendant is the appropriate remedy. Accordingly, this Court shall appoint a master to determine the fair value of the plaintiff's stock.
Counsel shall submit an appropriate order for entry.
[1] The sale of the Waldlum stock was to Peter and Gina Petrarca, the parents of John Petrarca. On December 3, 1983, the Petrarcas assigned eight hundred (800) shares of stock to John Petrarca and two hundred (200) shares to Thomas DiLuglio. (Exhibit 3).
[2] Although the stock certificates were dated January, 1986, it is clear that this was due to inadvertence. For the purpose of this decision the Court will assume January 1987 was the intended date. (Exhibit 12).