DECISION
This matter is before the Court for decision on the question of whether priority should be accorded to a certain secured proof of claim filed in receivership. The pertinent facts are as follows.
John K. Sullivan (hereinafter referred to as the Plaintiff) holds a one-third ownership interest in Star-Brite Laundromat, Inc.(hereinafter referred to as Star-Brite), a closely-held Rhode Island corporation. The remaining two-thirds is owned by John R. Assalone (hereinafter referred to as J. Assalone) and/or Bonnie Lee Assalone (hereinafter referred to as B. Assalone). To capitalize this corporation, both Plaintiff and J. Assalone initially loaned Star-Brite $13,500,[1] and later, when Star-Brite needed additional financing, Plaintiff made an additional $4,000 loan.[2] Plaintiff and the Assalones were the sole shareholders of Star-Brite, and all were officers and directors.
Pursuant to a 1981 lease covering the laundromat premises, Star-Brite (lessee) was bound to DeNomme, Inc. (lessor) for, among other things, rent, real estate taxes assessed, and all utilities (which presumptively includes sewer use fees).[3]
Said lease was personally guaranteed only by J. Assalone. On September 10, 1994, because Star-Brite was delinquent on the aforementioned obligations owed to DeNomme under the lease, a special meeting of Star-Brite's board of directors was called at which time it was decided, in a 2 to 1 vote, to borrow $20,000 from Asco Group, a business owned, at least in part, by the Assalones.[4] To evidence the debt, B. Assalone (as President of Star-Brite) signed a promissory note to Asco Group. Moreover, a security agreement dated that same day was also executed granting Asco a security interest in all of Star-Brite's assets, including its fixtures, equipment, inventory, receivables, and proceeds.[5]
While this was going on, Plaintiff had filed suit (in October of 1993) against J. Assalone, B. Assalone, ASCO, and Star-Brite seeking repayment of the aforementioned loans made to Star-Brite alleging, inter alia, that Star-Brite's assets were being mismanaged and/or misappropriated. On January 5, 1996, Star-Brite was petitioned into permanent receivership pursuant to the application of plaintiff.[6] Ultimately, on August 19, 1996, a consent order regarding payment of non-insider third party claims was signed by all pertinent parties and entered into record. This order acknowledged the aforementioned unsecured claims of both Plaintiff and the Assalones against Star-Brite as well as the secured claim asserted by Asco. However, these claims were voluntarily subordinated to the valid claims of all third party, non-insider creditors of Star-Brite.
In light of the above consent order, the sole issue to be decided by this Court concerns the remaining claims of Plaintiff, the Assalones, and Asco against the balance of funds left in the receivership estate after payment of the non-insider claims by the receiver as well as payment of all administrative expenses of the proceeding. Asco claims a first priority lien on remaining monies in the amount of $20,000 plus interest and costs, and it wants any surplus paid first to it. Plaintiff, on the other hand, contends that both he and the Assalones should be treated as unsecured creditors as to all claims.
With these facts as background, the Court will now turn to its analysis of this matter predicated upon the law.
It is well settled that the claims of officers, directors, and/or shareholders of an insolvent institution are subject to heightened scrutiny and even dissimilar treatment. See, e.g.,Pepper v. Litton, 308 U.S. 295, 306 (1939). Courts are particularly watchful in these situations because of the fiduciary status that such insiders must observe vis-a-vis the corporation when the individual acts both for himself and for the corporation. Tanzi v. Fiberglass Swimming Pools, Inc.,414 A.2d 484, 488-89 (R.I. 1980) (citing Point Trap Co. v. Manchester,98 R.I. 49, 54, 199 A.2d 592, 596 (1964)). See also Washburn v.Green, 133 U.S. 30, 43 (1890).
The mere fact of an insider relationship by itself, however, is insufficient to warrant equitable subordination of said insider's claim. In Re Hyperion Enterprises, Inc., 158 B.R. 555, 563 (D.R.I. 1993).[7] Insider status goes only to determining the standard under which the creditor's conduct is reviewed which, in this context, is one of simple unfairness. Id. See also
308 U.S. at 306 (noting that the burden is on the insider to show the good faith of the transaction and its underlying fairness to the corporation and those interested therein).[8] Where the claimant is an insider of the debtor, the proponent of equitable subordination need only show that the claimant breached a fiduciary duty or engaged in conduct that is somehow unfair. InRe Colonial Poultry Farms, 177 B.R. 291, 301 (Bkrtcy. W.D. Mo. 1995). Thus, it follows that if an insider or fiduciary uses his/her power to control in pursuit of his/her own personal gain to the detriment of the other creditors, such claims will generally be subordinated. See Olney v. The Conanicut Land Co.,16 R.I. 597, 600, 602 (1889); Matter of Fabricators, Inc.,926 F.2d 1458, 1467 (5th Cir. 1991); In Re N D Properties, Inc.,799 F.2d 726, 732 (11th Cir. 1986) (noting that such action for one's own benefit constitutes a breach of fiduciary duty); In ReHohenberg, 191 B.R. 694, 704 (Bkrtcy. W.D. Tenn. 1996).
In the instant case, J. Assalone — majority stockholder, officer, and director of Star-Brite (a close corporation), clearly was an insider of the debtor-corporation and as such, he owed strict fiduciary duties both to it and to its creditors, of which Plaintiff is one. See Long v. AtlanticPBS, Inc., 681 A.2d 249, 256 n. 8 (R.I. 1996) (citing Wilkes v.Springside Nursing Home, Inc., 370 Mass. 842, 848-53,353 N.E.2d 657, 661-64 (1976)); 16 R.I. at 599-600. See also 308 U.S. at 306. Under these circumstances, his action in having Asco (another of his corporations) loan money to Star-Brite while taking a security interest in its assets is immediately suspect. The case at bar, however, presents an unusual scenerio; in light of the aforementioned consent order, the sole remaining creditors of Star-Brite are, in effect, Plaintiff and J. Assalone, and both are insiders. See 11 U.S.C.A. § 101 (31) (B).
After carefully considering all the evidence before it, this Court finds that the loan transaction at issue was not entered into by J. Assalone in good faith with the intention of benefitting the debtor (Star-Brite) and its creditors (i.e. Plaintiff). To reiterate, J. Assalone had personally guaranteed the lease of the premises occupied by Star-Brite potentially making himself liable to the landlord for unpaid rent, sewer charges, taxes, etc. In other words, this was his debt to pay if Star-Brite could not, and before the transaction at bar occurred, Star-Brite apparently couldn't. Ultimately, with Plaintiff's suit pending, J. Assalone (who dominates both Star-Brite and Asco) drew a check on Asco and paid off "Star-Brite's" obligations under said lease while at the same time taking for Asco a security interest in Star-Brite. From these facts, the only reasonable conclusion is that J. Assalone was strategically utilizing his position to act only, or at least primarily, in his own interests. This Court thus finds as a matter of fact that J. Assalone's behavior while in control indicates that he was acting solely for his own benefit to minimize his risk of loss without consideration of other creditors (including Plaintiff). Moreover, J. Assalone — by arranging for Star-Brite, then insolvent, to grant his company (Asco) a secured loan while also ensuing that he will get out of his lease obligation and yet still being able to share in whatever proceeds are left (after the business was sold or, in this case, after non-insider third party claims and all other expenses of receivership are paid off) — gave himself an unfair advantage over Plaintiff.
Given the fiduciary relation of J. Assalone to Plaintiff, and in light of J. Assalone's self-dealing which clearly was inconsistent with his fiduciary duty, this Court finds that Asco's secured claim must be subordinated. (See cited cases.) The Court further finds that because of Star-Brite's insolvency at the time of the transaction, Assalone's actions constituted a bold attempt to secure the indebtedness of Star-Brite to himself to the exclusion of other creditors. Therefore, as between both Plaintiff and Asco (Assalone's other corporation), Asco's loan should not be treated as a secured claim, it should be subordinated to the level of the remaining claims of Plaintiff and Assalone. (See cited cases.) Accordingly, any monies left over after the terms of the consent order have been fully complied with should be split between them on a pro rata basis.
Counsel for the prevailing party shall submit an appropriate judgment for entry.
[1] According to Star-Brite's original accountant, these capital contributions were to be reflected on the corporate books as $4,500 in capital stock and $23,000 in loans from the shareholders. (See affidavit of Carmine Olivieri). The evidence of record is not precise with respect to the amounts of these original contributions, but for our purposes, they are close enough.
[2] At that later date, J. Assalone made an additional loan of $6,000 as well.
[3] Moreover, according to a judgment in a related case (C.A. No. 84-363), Star-Brite was ordered to pay to DeNomme any future sewer assessments applicable to the laundromat.
[4] Plaintiff dissented while J. Assalone and B. Assalone voted in favor. There was some evidence to indicate that at this meeting, Star-Brite's plan was to fulfill its current obligations with DeNomme so that they could renew their lease for a long term and then sell the business presumptively at a greater value than if sold in its present condition. (See transcript of meeting).
[5] This agreement was signed on behalf of Asco by J. Assalone (President), and on behalf of Star-Brite by B. Assalone (President). A UCC financing statement was filed September 15, 1994.
Both the note and the security agreement state that the appointment of a receiver for Star-Brite constitutes a default on the note allowing Asco to immediately take possession of its security if the aforementioned loan has not yet been paid off.
[6] E. Martin Stutchfield, Esq. was appointed Temporary Receiver of Star-Brite on December 1, 1995, and his appointment was made permanent on January 5, 1996.
[7] Such claims are not automatically subordinated because insiders often are the persons most interested in restoring and reviving the debtor and bona fide efforts on their part to do so are viewed with approval. Id.
[8] The insider making the loan must, inter alia, (1) act in good faith, (2) be free from all suspicion, and (3) seek no unfair advantage or undue benefit — in short, there must be no conflict in interest between the lender and the borrower. R.D. Hursh, Annotation, Validity of Security for Contemporaneous Loanto Corporation by Officer, Director, or Stockholder, 31 A.L.R.2d 663, 673-75 (1953).